**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| WHEELER BROS. INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.   2:14cv1258-PGB |
| | ) | |
| ROBERT L. JONES, JR., et al., | ) | (wo) |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Partial Summary Judgment (Doc. #62), filed by the Plaintiff, Wheeler Bros., Inc. ("Wheeler Bros."); a Motion for Summary Judgment of Less Than All Defendants (Doc. #66) filed by Defendants Robert L. Jones, III ("Laslie Jones"); Jonathan Caton Jones ("Caton Jones"); Kyle Breece Jones ("Kyle Jones"); Lavenia A. Jones ("Ann Jones");   Robert L. Jones, Sr. ("Bobby Jones"); A&B Developments, LLC; Jones Brothers Enterprises, LLC ("JBE"); and Best Buy Automotive & Tire, LLC ("Best Buy"); and a separate Motion for Summary Judgment (Doc. #67) filed by Defendant Virginia Jones.[1]

The Plaintiff filed a Complaint in this case bringing claims for breach of contract against Advanced Fleet Services ("AFS") (Count I), unjust enrichment against AFS (Count II), breach of contract against Robert Jones, Jr. (Count III), fraudulent conveyance of assets from AFS to Robert Jones, Jr. (Count IV), fraudulent conveyance of assets to Best Buy, Ann Jones, and Bobby Jones (Count V), fraudulent conveyance of assets to A&B Developments and Ann Jones

---

[1] No Motion for Summary Judgment has been filed on behalf of Roberts L. Jones, Jr.; Advanced Fleet Services, LLC; A&B Properties, LLC; or Pirates Tow, LLC.

(Count VI), fraudulent conveyance of assets to A&B Developments and Ann Jones (Count VII), fraudulent conveyance of assets to Best Buy, Bobby Jones, and Ann Jones (Count VIII), fraudulent conveyance of assets to Laslie Jones and JBE (Count IX), fraudulent conveyance of assets to Caton Jones and Pirates Tow, LLC ("Pirates Tow") (Count X), fraudulent conveyance of assets from JBE to Best Buy (Count XI), fraudulent conveyance of assets from Pirates Tow to Best Buy (Count XII), fraudulent conveyance of assets from Robert Jones, Jr. and/or AFS Services to A&B Properties (Count XIII), fraudulent conveyance of assets from A&B Properties to Best Buy (Count XIV), fraudulent conveyance of assets from Robert Jones and/or Advanced Fleet Services to Virginia Jones (Count XV), fraudulent conveyance of assets from Robert Jones, Jr. and/or AFS to Ann Jones (Count XVI), fraudulent conveyance of assets from Robert Jones, Jr. and/or AFS to Bobby Jones (Count XVII),   fraudulent conveyance of assets from Robert Jones, Jr. and/or AFS to Laslie Jones (Count XVIII), fraudulent conveyance of assets from Robert Jones, Jr. and/or AFS to Kyle Jones (Count XIX), fraudulent conveyance of assets from Robert Jones, Jr. and/or AFS to Caton Jones (Count XX), fraudulent conveyance of assets from JBE to Virginia Jones (Count XXI), fraudulent conveyance of assets from JBE to Bobby Jones (Count XXII), fraudulent conveyance of assets from JBE to Ann Jones (Count XXIII), fraudulent conveyance of assets from JBE to Laslie Jones (Count XXIV), fraudulent conveyance of assets from JBE to Kyle Jones (Count XXV), fraudulent conveyance of assets from JBE to Caton Jones (Count XXVI), fraudulent conveyance of assets from Pirates Tow to Virginia Jones (Count XXVII), fraudulent conveyance of assets from Pirates Tow to Bobby Jones (Count XXVIII), fraudulent conveyance of assets from Pirates Tow to Ann Jones (Count XXIX), fraudulent conveyance of assets from Pirates Tow to Laslie Jones (Count XXX), fraudulent conveyance of

assets from Pirates Tow to Kyle Jones (Count XXXI), fraudulent conveyance of assets from Pirates Tow to Caton Jones (Count XXXII), fraudulent conveyance of assets to A&B Developments (Count XXXIII), fraudulent conveyance of assets from A&B Properties to Bobby Jones (Count XXXIV), fraudulent conveyance of assets from A&B Properties to Ann Jones (Count XXXV), fraudulent conveyance of assets from A&B Properties to Laslie Jones (Count XXXVI), fraudulent conveyance of assets from A&B Developments to Bobby Jones (Count XXXVII), fraudulent conveyance of assets from A&B Developments to Ann Jones (Count XXXVIII), fraudulent conveyance of assets from A&B Developments to Laslie Jones (Count XXXIX), fraudulent conveyance of assets from A&B Developments to Caton Jones (XL), fraudulent conveyance of assets from A&B Developments to Virginia Jones (Count XLI), fraudulent conveyance of assets from A&B Developments to Best Buy (Count XLII), fraudulent conveyance of assets from Laslie Jones to Ann Jones, Bobby Jones, and/or Best Buy (Count XLIII), fraudulent conveyance of assets from AFS (Count XLIV), and piercing the corporate veil and/or alter ego theory against AFS, JBE, Pirates Tow, A&B Properties, A&B Developments, and Best Buy (Count XLV).

It appears to the court that the parties are completely diverse and the requisite amount is in controversy for the court to exercise diversity subject matter jurisdiction.

For the reasons to be discussed, the Motion for Partial Summary Judgment is due to be GRANTED, the Motion for Summary Judgment of Less Than All Defendants is due to be DENIED, and the Motion for Summary Judgment filed by Defendant Virginia Jones is due to be GRANTED in part and DENIED in part.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.   Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."   Fed. R. Civ. P. 56 (c)(1)(A),(B).   Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court

4

shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

The Plaintiff, Wheeler Bros., is a Pennsylvania corporation which designs, manufactures, and distributes motor vehicle parts.

AFS serviced vehicles for the United States Postal Service ("USPS") and also purchased motor vehicle parts from Wheeler Bros. for resale to the USPS.   AFS operated service centers in multiple locations including Houston, Texas.

Defendant Robert Jones, Jr. was the one-hundred percent owner of AFS.     JBE is a successor LLC to AFS, and was formed in 2011.

Laslie Jones is the son of Robert Jones, Jr. and is listed as the one-hundred percent owner of JBE.   Kyle Jones is the wife of Laslie Jones.

Pirates Tow is also a successor to AFS and was formed in 2012.   Caton Jones is also a son of Robert Jones, Jr.   Caton Jones is listed as the one-hundred percent owner of Pirates Tow.

A&B Properties is an LLC which held real property and was formed in 2002.   Bobby Jones and Robert Jones, Jr. own A&B Properties.   Bobby Jones and Ann Jones are the parents of Robert Jones, Jr.   Bobby Jones and Ann Jones own A&B Development, LLC which was formed in 1996.

Best Buy is owned by Bobby Jones and Ann Jones and operates out of the property formerly owned by A&B Properties. It was formed in 2010.

In October of 2010, Robert Jones, Jr. signed a Parts Sale Agreement as President of AFS with Wheeler Bros.   In December of 2010, Robert Jones, Jr. signed a personal guaranty as security for the extension of credit by Wheeler Bros. to AFS.   Wheeler Bros. provided parts to AFS in 2011 and 2012.   Wheeler Bros. would provide parts on credit to AFS and AFS would mark up and sell those parts to the USPS when AFS repaired USPS vehicles.   AFS began falling behind on payments to Wheeler Bros. in 2011 and had increasing debt in 2012.

Wheeler Bros. presents evidence that Robert Jones, Jr. was insolvent as of January 1, 2010.

In August of 2012, Wheeler Bros. filed a Confession of Judgment against Robert Jones, Jr. in Pennsylvania.

In August of 2012, Robert Jones, Jr. and his wife Virginia Jones filed for personal bankruptcy in the United States Bankruptcy Court of the Middle District of Alabama.   In February of 2013, Wheeler Bros. filed an adversary proceeding against Robert Jones, Jr. and his wife Virginia Jones.   Wheeler Bros. filed a request for default judgment against Robert Jones, Jr. and Virginia Jones which was entered on August 4, 2014.   The bankruptcy court declared that Robert Jones, Jr.'s debt to Wheeler Bros. was non-dischargeable.

Pirates Tow and JBE were formed after the bankruptcy petition.   JBE and Pirates Tow operate from the same location as the now-defunct AFS.   Pirates Tow and JBE provided services to AFS's previous customers.   In September of 2013, Laslie Jones went to work at another company and Robert Jones, Jr. ran JBE.

In September of 2014, Wheeler Bros. transferred judgment in the Pennsylvania case to Montgomery County, Alabama and Elmore County, Alabama.

Wheeler Bros. takes the position that Robert Jones, Jr. and AFS have fraudulently transferred $2.5 million in assets to various family members of Robert Jones, Jr. for no consideration in an attempt to defraud creditors, including Wheeler Bros.   In support of their case, Wheeler Bros. provides an Expert Report of Wessel & Company, Certified Public Accountants & Business Consultants (Doc. #72-47).   The Defendants have taken the position that the transfers identified by Wheeler Bros. did not violate the Alabama Uniform Fraudulent Transfers Act, or were within a statutory exception.

## IV. DISCUSSION

### A. Partial Motion for Summary Judgment by Wheeler Bros.

Wheeler Bros. Motion for Partial Summary Judgment seeks judgment against Robert Jones, Jr. and AFS.   Wheeler Bros. points out that in Robert Jones, Jr.'s responses to Wheeler Bros. Requests for Admissions, Robert Jones, Jr. admitted that AFS entered into the parts agreement with Wheeler Bros. and Robert Jones, Jr. admitted that he entered into the Personal Guaranty of AFS's obligations.   Robert Jones, Jr. admits that AFS purchased and received but did not pay for $794,530.13, worth of products from Wheeler Bros.   (Doc. #65-2).   Wheeler Bros., therefore, moves for entry of partial summary judgment pursuant to the Parts Agreement and Personal Guaranty in the amount of $794,530.13 plus interest at the rate of five-percent per month from the date it was incurred to the date of payment together with attorneys' fees incurred in collecting the debt in an amount to be determined by the court at the conclusion of the case.

In response, Robert Jones, Jr. argues that the Partial Motion for Summary Judgment is due to be denied because Wheeler Bros. has already received a judgment against Robert Jones, Jr. in Pennsylvania and the judgment has been domesticated in the Circuit Court of Montgomery,

Alabama. Robert Jones, Jr. argues, therefore, that summary judgment is due to be denied, and Wheeler Bros.'s claim against him is likely to be dismissed on the basis of res judicata.   No response is offered as to the Partial Motion for Summary Judgment as to the claim against AFS.

Wheeler Bros. points out in reply that Robert Jones, Jr. filed an Answer in Montgomery County Circuit Court which challenges the confession of judgment in the Pennsylvania court and asks that it be set aside.   Wheeler Bros. argues, therefore, that the judgment is not final and that no other defense has been raised, so summary judgment should be granted in favor of Wheeler Bros. and against Robert Jones, Jr. and AFS.

Upon consideration of the answers to Request for Admissions, and the evidence that the judgment entered in Pennsylvania and domesticated in Alabama is not a final judgment, the court concludes that summary judgment is due to be granted in favor of Wheeler Bros. as to Robert Jones, Jr. and AFS.   *See Greene v. Jefferson Cty. Comm'n*, 13 So. 3d 901, 911 (Ala. 2008) (noting the point at which judgment became final for res judicata purposes).   Judgment will be entered in favor of Wheeler Bros. and against Jones and AFS pursuant to the Parts Agreement and Personal Guaranty in the amount of $794,530.13 plus interest at the rate of five percent per month and attorneys' fees to be determined at the conclusion of the case.

### B.   Defendants' Motions for Summary Judgment

Wheeler Bros. has brought multiple claims against the moving Defendants in this case on the theory that Robert Jones, Jr. and his family transferred the lucrative portions of AFS to other companies owned by Robert Jones, Jr.'s family members and then filed for personal bankruptcy. Wheeler Bros. argues that Robert Jones, Jr. had amassed more than $5 million in debt, with $785,000.00 owing to Wheeler Bros., and Pirates Tow was created in the name of Caton Jones to

take over AFS's service center in Houston, Texas; JBE was created in the name of Laslie Jones to take over the manufacturing of parts to be resold to the USPS; and Best Buy was set up in the name of Robert Jones, Jr.'s parents to service postal vehicles and conduct retail vehicle repair operations that AFS previously had conducted.

Defendants A&B Developments, Best Buy, JBE, Caton Jones, Kyle Jones, Ann Jones, Laslie Jones, and Bobby Jones together, and Defendant Virginia Jones separately, have filed Motions for Summary Judgment as to claims brought against them.   The court will first address the multi-defendant motion and then Virginia Jones's motion.

    1.    Motion for Summary Judgment by A&B Developments, Best Buy, JBE, Caton Jones, Kyle Jones, Ann Jones, Laslie Jones, and Bobby Jones

The moving Defendants argue that they are entitled to judgment for claims brought pursuant to the Alabama Uniform Fraudulent Transfer Act ("AUFTA").   The AUFTA provides that a "transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor."   Ala. Code §8-9A-4.   Intent may be determined using several factors, including whether

(1) The transfer was to an insider;
(2) The debtor retained possession or control of the property transferred after the transfer;
(3) The transfer was disclosed or concealed;
(4) Before the transfer was made the debtor had been sued or threatened with suit;
(5) The transfer was of substantially all the debtor's assets;
(6) The debtor absconded;
(7) The debtor removed or concealed assets;
(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;
(9) The debtor was insolvent or became insolvent shortly after the transfer was made;
(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

9

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Ala. Code §8-9A-4(b).   *See also In re XYZ Options, Inc.*, 154 F.3d 1262, 1272 (11th Cir. 1998).

Also under Ala. Code §8-9A-5:

(a) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer.
(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt and the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

There are also statutory defenses, including a good faith transferee provision which provides that a transfer is not voidable against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee who took in good faith. Ala. Code §8-9A-8(a).   "A subsequent transferee who was a party to the fraud does not take in good faith." Comment 1, Ala. Code 8-9A-8(a).    Also under the statute,

Notwithstanding voidability of a transfer under this chapter, a good-faith transferee is entitled, to the extent of the value given the debtor for the transfer or to another person as a consequence of the debtor's making such transfer, to
(1) A lien on or a right to retain any interest in the asset transferred; or
(2) A reduction in the amount of the liability on the judgment.

Ala. Code §8-9A-8(d).   "Good faith transferee" is not defined in the Alabama statute.

Borrowing from Georgia law, the bankruptcy court in the Middle District of Alabama has defined a "good faith transferee" as a person who through objective consideration lacks not just actual knowledge of fraud, but also a lack of knowledge of circumstances requiring further investigation.   *In re Dorsey*, No. 09-11157-WRS, 10-1006-WRS, 2011 WL 4914841, at *3 (Bankr. M.D. Ala. October 17, 2011).   The court also noted that proving applicability of Ala.

10

Code §8-9A-8(d) requires proof that the person is a good-faith transferee and gave value as a consequence of the transfer. *Id.* at *2-3.   In other words, the defense requires two showings: lack of inquiry notice and that the transferee gave value.

The Defendants have taken the position that transfers identified by Wheeler Bros. in this case were made for value under the *Horton v. Alexander*, 977 So.2d 462 (Ala. 2007) decision. The *Horton* decision concluded that the statutory phrase "or to another person as a consequence of the debtor's making such transfer," refers to value given by a good-faith transferee to any other person, without qualification or exception, as a consequence of the debtor's transfer.   977 So.2d at 469.

While they do not expressly concede any aspects of their motion, in their Reply to Wheeler Bros.'s response in opposition to their motion, the Defendants advance additional arguments only with respect to the good-faith transferee defenses of Kyle Jones, Caton Jones, and Bobby Jones.   The court begins with arguments by those individual Defendants.

a.   Kyle Jones

As noted earlier, Kyle Jones is the wife of Laslie Jones.   Wheeler Bros. has provided an Expert Witness Report which contains schedules identifying $8,000 transferred to Kyle Jones from AFS which the expert identifies as fraudulent.   (Doc. #72-47 at p. 13-4).

Kyle Jones argues that she is entitled to judgment because no transfer was made to her within the meaning of Ala. Code §8-9A-5.   Kyle Jones states that she provided labor to JBE for website design, branding, and marketing in 2011 and 2012, and so returned reasonably equivalent value to JBE for any transfer.   Kyle Jones also argues that even if there was a transfer made to her within the meaning of the statute, and even assuming that ASF or Robert Jones, Jr.

made those transfers to Kyle Jones with the intent to hinder, delay, or defraud, Kyle Jones is a good-faith transferee because she received money which was reasonably equivalent to the labor she performed.   She points to her deposition testimony that she worked forty hours a week for JBE doing website design and other tasks.   (Doc. #66-2 at p.14-16).   She also cites to answers to interrogatories in which Kyle Jones refers to her tax returns to establish her income from JBE. (Doc. #66-3 at p.3).

Wheeler Bros., in responding to the Motion for Summary Judgment, has presented evidence that Kyle Jones received funds from AFS even though she admitted that she did not work for AFS.   In her Answers to Interrogatories, Kyle Jones states that her employers from 2009 to the present include Jackson Thornton Tech, JBE, PC Income Tax, the Publicis Touchpoint.   (Doc. #72-43 at pages 36-7).   As previously noted, to substantiate her having received income for work for JBE, in the Answer to Interrogatories, Kyle Jones refers to her tax returns. (Doc. #72-43 at p. 41).   Wheeler Bros. responds, however, that a question of fact has been created as to whether Kyle Jones received payment from AFS for work for services provided to JBE because she has provided no pay records or pay stubs and failed to report any income from JBE on her tax returns.   (Doc. #72-45 at p.40-47).

The court has reviewed the tax return evidence provided. Within the joint tax return for Laslie Joes and Kyle Jones, there is an Income Worksheet which lists income from Advanced Fleet Services, Grooms Engines, and P.C. Income Tax, Inc. (Doc. #72-45 at p.39).   There are attached W-2 forms from AFS and Grooms Engines-Parts-Machining, Inc. for Laslie Jones and a W-2 form from P.C. Income Tax, Inc. for Kyle Jones (Doc. #72-45 at p.41-2).   There is no W-2 form from JBE or AFS for Kyle Jones.

12

While in their reply brief the Defendants continue to maintain that Kyle Jones received the money from AFS as payment for services to JBE, they do not respond to the evidentiary argument based on Kyle Jones's tax returns made by Wheeler Bros.   The court must conclude that there is a question of fact as to whether Kyle Jones received money from ASF as payment for services to JBE.

As set out above, value provided for services is relevant for two inquiries.   First, under Ala. Code §8-9A-5(a), a transfer is fraudulent if it is made without the debtor receiving a reasonably equivalent value for the transfer.   There are questions of fact as to the purpose of transfers from ASF to Kyle Jones, and no evidence that Kyle Jones was working for ASF, so there is evidence, for purposes of Ala. Code §8-9A-4, 5, that ASF and Robert Jones, Jr. made transfers without receiving a reasonable equivalent value in exchange.

Second, under the defense in Ala. Code §8-9A-8(a), a transfer is not voidable against a person who took in good faith for reasonably equivalent value. *See also In re Dorsey*, 2011 WL 4914841, at *2-3.   It is this defense to which the holding in *Horton* applies so that value given by a good-faith transferee to any other person as a consequence of the debtor's transfer satisfies the requirement of the exception.   977 So.2d at 469.

Kyle Jones contends for the first time in her reply brief that summary judgment can be granted to the Defendants on the claim against Kyle Jones because Wheeler Bros. has failed to point to evidence as to her intent.   Kyle Jones states that the Plaintiff, Wheeler Bros., has failed to present any material evidence that Kyle Jones had any knowledge of or could have discovered any fraudulent purpose in the transfer to her, citing *In re Christou*, No. 06-68251-MHM, 06-68376-MHM, 2010 WL 4008167 (Bankr. N.D. Ga. Sept. 24, 2010).   In anticipation of that

13

argument, Wheeler Bros. pointed to evidence to show that Kyle Jones knew that her rent was being paid by the business to support the argument that she had knowledge of circumstances regarding further investigation.   (Doc. #72-24 at p.4).[2]

Due to questions of fact as to whether Kyle Jones received a transfer from AFS for services provided to JBE, the court must conclude that she has not established entitlement to good faith transferee defense as a matter of law.   The defense, as to which Kyle Jones has the burden of proof, requires a showing that the good-faith transferee gave value as a consequence of the transfer.   *In re Dorsey*, 2011 WL 4914841, at *3.   There are question of fact on that point. Accordingly, the Motion for Summary Judgment by Kyle Jones is due to be DENIED.

b.   Caton Jones

As noted, Caton Jones is a son of Robert, Jones, Jr.   Wheeler Bros. has provided an Expert Witness Report which contains schedules identifying sums transferred to Caton Jones from Pirates Tow and from AFS which Wheeler Bros. argues were fraudulent transfers.

Caton Jones states that he does not dispute his receipt of these sums, but argues that he is entitled to summary judgment because he provided labor for services for Pirates Tow and for entities owned or operated by his family, such as Best Buy, JBE, and AFS, in exchange for these transfers.   Caton Jones argues that for purposes of Ala. Code §8-9A-5(a), he is entitled to summary judgment because Wheeler Bros. cannot show that the transfer was made without reasonably equivalent value because he provided labor for which he was compensated.   Caton Jones also argues that even assuming there is evidence that AFS or Robert Jones, Jr. transferred

---

2 At various points, the Defendants refer to evidence by Plaintiff's exhibit number and at other points they refer to appendix numbers, which are included in a range of documents with a single document number.   The court has attempted to locate these exhibits and cite to the document and page number as reflected in the CMECF system.

assets to Caton with the intent to hinder, delay, or defraud Wheeler Bros., he is entitled to the

defense in Ala. Code §8-9A-4(a), because the transfers were received with an equivalent

exchange of value for the transfers because Caton Jones provided labor such as driving wreckers

and performance maintenance tasks on the equipment of Pirates Tow and other entities.

   As evidentiary support, Caton Jones points to testimony in his deposition that he believes

he was paid around $600 while he was working at Pirates Tow and that he was paid every week,

or sometimes every other week.   (Doc. #72-25 at p.22:1-10).   Caton Jones also stated in his

deposition that he was working for his father, but not in a set position, but rather just helping in

areas in which help was needed.   (Doc. #66-4 at p. 15).   In his Answers to Interrogatories,

Caton Jones states that he was paid $750 a week working for AFS and for JBE.   (Doc. #66-5).

He further states that all income from working for Pirates Tow is reflected on his tax returns.

(Doc. #66-5 at p.6).

   Wheeler Bros. responds that the expert report which identifies fraudulent transfers does

not include the $750.00 a week salary that Caton Jones was being paid by Pirates Tow.   Instead,

transfers of $13,473.56, $404.43, and $3,733.59 which were made to Caton Jones at the same

time that he was receiving his weekly salary are the transfers identified as being fraudulent.

Wheeler Bros. provides evidence from its experts' report which states that in their report, they

included only payments in excess of Caton Jones's payroll which were not reported on his tax

returns. (Doc. #72-28 at p.1).    They state that there are transfers in addition to salary and which

are not disclosed on Caton Jones's income tax, that no evidence has been provided of the hours

worked, and that the amount paid in excess of payroll, $48,000, is in excess of a reasonable

equivalent value for the tire changing services Caton Jones says he performed.   (Doc. #72-28 at

p.2).

Viewing the evidence in a light most favorable to the non-movant, the court concludes that there is a question of fact which precludes summary judgment on the issue of whether the transfers to Caton Jones were received with an equivalent exchange of value for purposes of liability and for the good-faith transferee defense.

In his reply brief, Caton Jones also argues for the first time that there is no evidence that he had any knowledge of any fraudulent purpose or could have discovered any fraudulent purpose through diligent inquiry.   Caton Jones states that Wheeler Bros. merely assumes from the facts that Caton Jones's father organized a company in Caton Jones's name that he should have knowledge of a fraudulent purpose or transfer.

Wheeler Bros. has argued, among other things, that Caton Jones was on inquiry notice because he knew or should have known of Robert Jones, Jr.'s insolvency and the insolvency of AFS because before Pirates Tow began to operate the service center in Houston Texas that had previously been operated by AFS, Robert Jones, Jr. had declared bankruptcy.

There are issues of fact regarding Caton Jones knowledge but even without evidence of intent, questions of fact as to the value exchanged for transfers to Caton Jones are sufficient to establish liability and preclude the transferee defense for purposes of the Defendants' Motion. The court concludes, therefore, that summary judgment is due to be denied as to the claims against Caton Jones.

c.   Laslie Jones and JBE

Laslie Jones has made different arguments in support of summary judgment depending on the transfer of assets in question.   With respect to transfers of inventory and equipment to JBE, Laslie Jones argues that no transfer was made to him individually.   With respect to transfers of cash to him personally, Laslie Jones also contends that he is entitled to judgment on the ground that even assuming that the record evidence reflects that AFS, Robert Jones, Jr., or any entity controlled by Robert Jones, Jr. transferred an asset to Laslie with the actual intent to hinder, delay, or defaud, he returned reasonably equivalent value in exchange for said transfer.

       1.   Transfers to JBE

With respect to transfers of equipment and inventory, Laslie Jones states that Wheeler Bros.'s Expert Witness Report reflects that AFS transferred equipment and inventory to JBE, but not to Laslie Jones individually.   Specifically with regard to equipment valued at $120,000.00, Laslie Jones states that the transfer was to JBE, not Laslie Jones, and that AFS borrowed money using this equipment as collateral to secure the loan.   Laslie Jones argues that a transfer of $259,429.20 and another transfer of $11,925.00 were transfers to JBE, and so were not transfers to Laslie Jones, did not benefit him individually, and cannot be voided.   Laslie Jones argues that if the court were to consider these transfers to Laslie Jones individually, the court would be ignoring the corporate form of JBE.   Laslie Jones finally argues that although Wheeler Bros. has stated through its Expert Witness Report that certain transfers benefitted Laslie Jones individually, Wheeler Bros. has failed to show how Laslie Jones individually can be divested of an assert transferred to an entity in which he holds an interest.

Wheeler Bros. states that JBE was an alter ego of Laslie Jones prior to September 2013 so that the corporate form of JBE should be ignored and the assets transferred to JBE should be

17

considered transfers to Laslie Jones.

To impose liability on a defendant for acts of a corporation on the ground that the corporation was an instrumentality or alter ego of the defendant, a plaintiff must show (1)  the party has complete control and dominion over the subservient corporation's finances, so that the subservient corporation has no separate existence, (2) the control must have been misused by the dominant party, (3) the misuse must be the proximate cause of the harm. *Messick v. Mooring*, 514 So. 2d 892 (Ala. 1987).

Wheeler Bros. states that the first element of *Messick* is undisputedly satisfied as evidenced by Laslie Jones' statement in the Defendant's own brief that Laslie Jones had complete control and domain of JBE's finances, policies, and practices.  (Doc. #66 at p.21). 514 So. 2d at 895 (stating "it is essential that complete control and domination be proven."). Wheeler Bros. points to Laslie Jones's deposition testimony in which he states that there were no corporate meeting minutes, no written resolutions, or corporate books other than financial records.  (Doc. #72-45 at p.23-4).   Wheeler Bros. states that Laslie Jones used JBE to pay for his personal expenses including house rent, a Tahoe payment, a Mercedes payment, and cellphones and insurance, which was a misuse of the business and satisfies the second requirement.   Wheeler Bros. provides evidence of an email which states that the Jones companies will pay for Laslie Jones's call phones, vehicle payments, and house lease payments. (Doc. #72-12).   Wheeler Bros. argues that the third *Messick* requirement is satisfied because it and other creditors of AFS were harmed by transfers to Laslie Jones.

The court finds support for Wheeler Bros.'s application of *Messick* in this case in a decision within this circuit.  *See In re World Vision Entm't, Inc.*, 275 B.R. 641, 659 (Bank. M.D.

Fla. 2002).   The analysis of *In re World Vision Entertainment, Inc*., applies a standard similar to that used in Alabama.   *See Dorsey v. DePaola*, No. 2:11cv1026-MEF, 2012 WL 1957713, at **2 (M.D. Ala. May 31, 2012).   In that case, a bankruptcy debtor transferred assets in the form of commission payments to corporations.   The bankruptcy trustee sought to void those transfers and to hold an individual defendant personally liable by piercing the corporate veil of those corporations.   The court reasoned that proof of control and dominion by the individual defendant over the corporations which received the transfers, evidence that the principals could not identify separate officers and directors of the corporations, and evidence that the individual defendant used the corporations to conduct his personal business, and participation in the debtor's fraudulent enterprise allowed the trustee to pierce the corporate veil.   *Id.* at 663.

In light of these cases, and Wheeler Bros.'s evidence to support piercing the corporate veil, the court concludes that the Laslie Jones's legal argument that assets transferred to JBE cannot be considered assets of Laslie Jones is unavailing, and the Motion for Summary Judgment as to the transfer of assets and inventory to JBE is due to be DENIED.   *See Perry v. Household Retail Servs., Inc.,* 953 F. Supp. 1378, 1382 (M.D. Ala. 1996) (stating "given evidence of these factors and the numerous factual disputes concerning this area, the court finds that the determination of whether the corporate veil should be pierced is an issue for the trier of fact at trial, where the trier of fact can make choices as to credibility and weight of the evidence.").

### 2.   Transfer to Laslie Jones Directly

The other transfer by AFS to Laslie Jones at issue in the Motion for Summary Judgment is a transfer of cash from AFS to Laslie Jones.   Laslie Jones acknowledges that AFS transferred

$40,000 in cash as payroll to Laslie Jones, but he states that the alleged transfer is not fraudulent and voidable because he is the sole member of JBE and conducted the daily operations of JBE until September 2013, so he provided an equivalent exchange of value.   Laslie Jones states that although JBE is the direct beneficiary of those services, and not AFS or Robert Jones, Jr., that is immaterial under the Alabama Fraudulent Transfers Act under *Horton*.   Finally, in his Reply brief, Laslie Jones argues that Wheeler Bros. has failed to set forth any substantial or material evidence to establish that Laslie Jones had knowledge of any fraudulent purpose or could have discovered any such purpose through diligent inquiry.

Wheeler Bros. responds that Laslie Jones's claim that he provided services in return for the $40,000.00 in salary is contrary to his Answers to Interrogatories in which he stated that he ended work for AFS and began to work for JBE in September 2011.   The Answers to Interrogatories state that Laslie Jones worked for AFS from May 2010 to September 2011 and from JBE from September 2011 to September 2013.   (Doc. #66-7 at p.4).

For purposes of liability under the AUFTA, Ala. Code §8-9A-5(a), a question of fact has been raised as to whether value was given the debtor for the transfer of cash to Laslie Jones. Wheeler Bros. has presented evidence to meet its burden to show, under Ala. Code §8-9A-5(a), that no equivalent value was received by the debtor for the transfer to Laslie Jones, because Laslie Jones was paid by AFS, and there is at least a question of fact as to whether labor was provided to AFS.

As to the good-faith transferee defense, Wheeler Bros. argues that the *Horton* rationale does not apply because Laslie Jones is not a good faith transferee and knew or should have known that Robert Jones, Jr. and AFS were insolvent when the transfers were made.

Under the defense in Ala. Code §8-9A-8(a), a transfer is not voidable against a person who took in good faith for reasonably equivalent value. *See also In re Dorsey*, 2011 WL 4914841, at *2-3 (noting that the defense in Ala. Code §8-9A-8(d) requires proof that the good-faith transferee gave value as a consequence of the transfer).

Laslie Jones's explanation is that AFS paid him for work that he performed for entities other than the debtor.   Laslie Jones bears the burden of proving his defense.   Wheeler Bros. takes the position that Laslie Jones has not established that transfers were made for reasonably equivalent value because he has provided no evidentiary support for his claim that the services he provided the new company, JBE, were worth $40,000.   Laslie Jones has presented no evidence on this point.   These questions of fact are sufficient to preclude summary judgment as to transfers of cash by AFS to Laslie Jones.

A "good faith transferee" is a person who through objective consideration lacks not just actual knowledge of fraud, but also a lack of knowledge of circumstances requiring further investigation.   *In re Dorsey*, 2011 WL 4914841, at *3.

Laslie Jones states that the mere fact that he was the son of Robert L. Jones, Jr. and was employed by various family companies does not mean that he had knowledge or should have had knowledge of any fraudulent purpose or transfer.

Wheeler Bros. states that its experts determined that JBE had no inventory on hand on December 31, 2011, but began selling parts. (Doc. #72-47 at p.11).   AFS in its Answers to Interrogatories denied that it had any involvement with JBE. (Doc. #72-2 at p.44).   The Expert Report also states that JBE took over the former AFS facility.

Wheeler Bros. also provides an email exchange sent to Laslie Jones in which an

21

individual named John McGovren from Jasper Engines in which McGovern sought confirmation

that he should just set up "everything we bought from AFS to buy from Jones Bros."   (Doc.

#72-5 at p.13).   Laslie Jones insists that he conducted the daily operations of JBE.   (Doc. #75 at

p.6).

There is evidence that Laslie Jones was aware that JBE had taken over inventory of AFS

and was selling it and that AFS had ceased doing business.   *Cf. In re Pearlman*, 440 B.R. 569,

577 (Bankr. M.D. Fla. 2010) *aff'd*, 478 B.R. 448 (M.D. Fla. 2012) (applying bankruptcy law and

finding that a transferee can be put on inquiry notice by "information regarding the borrower's

financial difficulty.").   The court concludes, therefore, in addition to a failure of proof as to the

value of the transfers of cash, viewing the evidence in a light most favorable to the non-movant

that there are sufficient questions of fact as to knowledge to preclude summary judgment as to

Laslie Jones on his defense.

### 3. Transfers by JBE, A&B Developments, LLC and Best Buy Automotive and Tire, LLC

In Count XLV, the Plaintiff brings a claim for piercing the corporate veil and/or alter ego

theory against AFS, JBE, Pirates Tow, A&B Properties, A&B Developments, and Best Buy

Automotive and Tire, LLC ("Best Buy").   The Defendants have moved for summary judgment

as to Count XLV as to JBE, A&B Developments, and Best Buy.   The count includes a theory

that the corporate forms of these entities should be disregarded because the corporations were

operated fraudulently, fraudulent in their conception, operated as an alter ego of Robert Jones, Jr.

and/or operated as an alter ego of one another. (Doc. #1 at p.115).

JBE, A&B Developments, and Best Buy contend that Wheeler Bros. has not and cannot

at this time present any evidence to establish the necessary elements of piercing the corporate veil.   They state that the membership interest in Best Buy is held at 50% by Bobby Jones and 50% by Ann Jones, and that it is controlled and managed by Bobby Jones.   They argue that there is no evidence that Robert Jones, Jr. had complete control and dominion over Best Buy's finances such that it had no separate existence.   Similarly, they argue that the membership interest in A&B is 1% by Bobby Jones and 9% by Ann Jones, and JBE's membership interest is held at 100% by Laslie Jones, so there can be no showing that those entities are alter egos for Robert Jones, Jr.

Wheeler Bros. states that the Defendants in moving for summary judgment only on a theory that the companies were alter egos of Robert Jones, Jr. have ignored the theory pled in the Complaint that AFS, JBE, Pirates Tow, A&B Properties, A&B Developments, and Best Buy failed to follow corporate formalities and were operated as an instrumentality or alter egos of one another. (Doc. #1 at ¶558).   Wheeler Bros. also points out that the Complaint alleges that the corporate formalities should not be observed because the companies operated fraudulently or were fraudulent in their conception and set up as a mere subterfuge.   (Doc. #1 at ¶558). Wheeler Bros. presents evidence to support these theories, including Findings 12-20 of their Expert Report, to show that AFS and other entities co-mingled funds and did not observe corporate formalities.

The Defendants do not address these arguments in their Reply brief.

The question of piercing the corporate veil is "a question of fact ... to be determined on a case by case basis." *Hill v. Fairfield Nursing & Rehab. Ctr., LLC*, 134 So. 3d 396, 411 (Ala. 2013) (quoting *Messick v. Moring*, 514 So.2d 892, 893 (Ala.1987)).   Alabama courts have stated

23

that courts should not "allow a corporate entity to successfully masquerade through [its corporate affiliates] so as to defeat the payment of its just obligations." *Id.* (citation omitted).   Because the Defendants have not moved for summary judgment as to all of Wheeler Bros.'s theories of piercing the corporate veil, and Wheeler Bros. has presented evidence to support its theories, the court cannot conclude that summary judgment can be granted the Defendants on the issue of piercing the corporate veil.

An additional issue is presented by the Motion for Summary Judgment because the Defendants have argued that judgment is due to be entered as to Count XLV, and also as to all claims based upon allegedly fraudulent transfers from JBE prior to September, 2013; from Best Buy; and from A&B Properties,[3] because Robert Jones, Jr. is the debtor in this case, not those companies.   In other words, even if the corporate veil of, for example, Best Buy, were pierced, it would not be an alter ego of Robert Jones, Jr., so transfers by Best Buy would not be voidable transfers of the debtor under the AUFTA.   The Defendants argue that the AUFTA does not apply to claims against third-party transferors, citing *S.J. Holding Co., Inc. v. Kadco, Inc.*, 874 So. 2d 1036, 1040 (Ala. 2003).

There is case law which stands for the proposition that an AUFTA claim lies against transfers by a debtor, not by a third-party.   *Id.*   There is, however, other authority regarding transfers which are subsequent to a fraudulent transfer by the debtor.   For instance, in *Cotton Energy Corp. v. Smith*, 718 So. 2d 1142, 1144 (Ala. Civ. App. 1998), in a case transferred to it by the Alabama Supreme Court, the Alabama Court of Civil Appeals reversed the decision of the

---

3   The Defendants identify such claims as being included in Count XI, Count II, Count XIV, Count XXI, Count XXIII, Count XXIV, Count XXV, Counts XXVI, Count XXVII, Count XXXVIII, Count XXXIX, Count XL, Count XLI, and Count XLII.   (Doc. #66 at p.22).

lower court to deny a creditor's claim against a grantee of a fraudulent transfer.   The court explained that if property is in the hands of a fraudulent grantee, the grantee occupies the position of a trustee and is accountable to creditors.   718 So. 2d 112, 1145.

Wheeler Bros. points to Ala. Code §8-9A-8(b), which provides that a creditor may recover judgment for the value of an asset transferred against "(1) the first transferee of the asset of the person for whose benefit the transfer was made; or (2) any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee."   Wheeler Bros. argues with respect to JBE , for example, that JBE was not a good faith transferee from AFS and Robert Jones, Jr. and, therefore, all transfers from JBE to Jones' family members and the companies they owned are subsequent transfers subject to Wheeler Bros.'s claim as a creditor.

Wheeler Bros. has not cited, and the court has not found, Alabama cases applying Ala. Code §8-9A-8(b) to similar facts.   There are, however, decisions of other courts interpreting substantially similar statutory provisions.   In *Eastern Savings Bank v. Bucci*, No. 08-MA-23, 2008 WL 5124559 (Ohio Ct. App. Dec. 4, 2008), the court applied a provision which stated that a judgment by a creditor may be entered against the first transferee of the asset or the person who whose benefit the transfer was made and any subsequent transferee other than a good faith transferee who took for value or from a subsequent transferee.   *Id.* at *11.   The court noted that it is the debtor's fraud which is at issue, not any other person's intent.    *Id.* The court explained that a first transferee of a transfer from the debtor has a defense that they took in good faith and for a reasonably equivalent value. *Id.* at *12.   The court reasoned that the requirements for a first transferee must be satisfied before a "subsequent transferee" can take advantage of a defense.

25

*Id.* (stating that the statute placing requirements on a predecessor transferee and then using the phrase "subsequent transferee" means that there "must have been a predecessor transferee who met the statutory requirements.").   Therefore, the first subsequent transferee must have been a transferee of a person who took in good faith and for a reasonably equivalent value.   *Id.*   The court further reasoned that the statute provides a defense to a "subsequent good faith transferee who took for value or from any subsequent transferee."   *Id.* at *13.   In the *Eastern Savings Bank,* the claimed first transferee gave nothing in return for the transfer, and there were questions of the transferee taking in good faith, so that the subsequent transferee defense was not available. *Id.* at *13.

This court is persuaded by the *Eastern Savings Bank* analysis and finds it applicable to the Alabama statutory provision relied on by Wheeler Bros.   The court concludes that the Defendants' legal argument that piercing the corporate veil does not allow for relief for Wheeler Bros.'s because the subsequent transfers were made by companies and people other than the debtor is unavailing.   Instead, there are questions of fact as to whether transfers made after the initial transfer by the debtor were in good faith and for reasonable value which will have to be decided by the jury.

     d.   Best Buy, Robert L. Jones, Sr., and Lavenia A. Jones Sale of Real Property at 3835 Atlanta Highway

A&B Properties, owned by Robert L. Jones, Jr. and Bobby Jones, sold a parcel of property at 3835 Atlanta Highway to Best Buy.   Wheeler Bros. brings a claim of fraudulent transfer as to this transaction, stating that the sale was for less than the fair market value and that the beneficiary of the transfer is Ann Jones.   Wheeler Bros. presents evidence of a Settlement

Statement signed by Robert Jones, Jr. and Ann Jones for Best Buy and Robert Jones, Sr. and Robert Jones, Jr. for A&B Properties, LLC with a settlement date of March 29, 2012. (Doc. #72-46 at p.42).   Wheeler Bros. argues that this transaction occurred only five months before Robert Jones, Jr. filed for personal bankruptcy in August of 2012.

The Defendants state that the transfer to Best Buy occurred in either May 2011 or March 2012.   The Defendants state that Best Buy began making payment on the property in May 2011 because Robert Jones, Jr. was delinquent on payments and that Best Buy took out a new loan in its name to pay-off the loan that was in the name of A&B Properties in March 2012. Wheeler Bros. presents evidence that the payments by Best Buy before March 2012 were treated as rent payments, not mortgage payments (Doc. #72-48 at p.129).   The difference between the dates has significance according to the Defendants because they argue that even assuming there was a transfer of an asset, if the transfer occurred in May of 2011, A&B Properties had no equity in the property, and if the transfer occurred in March of 2012, the value would be reduced to the amount for which the property was appraised before the improvements by Best Buy.

Considering the evidence in a light most favorable to the non-movant, the court concludes that Wheeler Bros.'s evidence indicating that payments before March 2012 were rent, and evidence of the Settlement Statement, there is evidence to support that the transfer occurred in March 2012.

The Defendants also move for summary judgment on the ground that the transfer of the property is not a transfer of an asset under the AUFTA because the piece of property was fully encumbered by a valid lien, citing *In re Vista Bell, Inc*., No. 11-00149-MAM, No. 12-00060-MAM (S.D. Ala. Aug. 9, 2013) (stating "[i]f a piece of property is fully encumbered by a 'valid

lien,' then it is not an asset under the UFTA.").   The Defendants acknowledge that the loan agreement in March of 2012 was for $315,500.00, and that the property had been appraised at $690,000.00 on March 1, 2012, but find significant that the appraisal included improvements to the property made by Best Buy.

Wheeler Bros. argues in response that the improvements made to the property became part of the real property, citing *Milford v. Tennessee River Pulp and Paper Co*., 355 So. 2d 687 (Ala. 1978).   Wheeler Bros. also states that the Defendants concealed the $690,000 appraisal from it and Wheeler Bros. only obtained it by subpoenaing the lending bank, even though Bobby Jones said that he was aware of the appraisal and paid for it.   Wheeler Bros. argues that the $690,000.00 appraisal performed shortly before the transfer was an appraisal of real estate owned by A&B Properties and the only consideration received for the transfer to Best Buy was $315,000.00.   Wheeler Bros. states that a fraudulent transfer of Robert Jones, Jr.'s one-half interest in A&B Properties in the amount of one-half of the difference between $690,000.00 and the $315,000 consideration paid for the property, or $189,534.00, should be voided.   These arguments are not responded to in the Defendants' Reply brief.

There are questions of fact created by loan documents and the $690,000 appraisal which would allow for finder of fact to conclude that an asset was transferred within the meaning of the AUFTA.   The court concludes, therefore, that summary judgment is due to be DENIED as to this claim.

2.  Virginia Jones

Wheeler Bros.'s expert report states that Virginia Jones received $18,645.49 in fraudulent transfers.   Wheeler Bros.'s expert has identified as fraudulent transfers to Virginia Jones in three

categories:   transfers from Pirates Tow, transfers by JBE as payments to Honda Finance, and by JBE as payments to BlueCross and BlueShield.

Virginia Jones filed a separate Motion for Summary Judgment.   She argues that she is entitled to judgment because she is a homemaker and housewife and was not and is not involved with any of the Defendant businesses.   She states that she is completely reliant on her husband, Robert L. Jones, Jr., and she has not received property or other assets from anyone other than her husband.   She specifically moves for summary judgment as to these transfers: $6,242.75 in payments to Honda Finance and transfers of $12,402.74 which were premium payments to Blue Cross and BlueShield for her health insurance coverage.

According to Virginia Jones, the transfers to Honda Finance were for a 2012 Acura automobile which she says was owned by her son Caton Jones.   She cites to her deposition testimony in which she states that she has been driving a Mercedes which is owned by her father-in-law. (Doc. #67-3 at p.20: 4-10).   She says, therefore, that she did not receive a benefit of that allegedly fraudulent transfer.

According to the Expert Report, Schedule 9, payments were made to Honda Finance by Pirates Tow in 2013, and then were made by JBE in 2014 and 2015. (Doc. #72-47).   Wheeler Bros. states that Virginia Jones does not move for summary judgment as to the transfers from Pirates Tow.   With respect to the transfers from JBE, Wheeler Bros. argues that it can make out a prima facie case that JBE was an alter ego of Robert Jones, Jr. when he was the owner of JBE in 2014.   Wheeler Bros. points to Caton Jones's deposition testimony that his vehicles were motorcycles, a pick-up truck, and tow truck (Doc. #72-45 at p.46: 4-10).   Caton Jones does not mention a 2012 Acura in this testimony.

Although given the opportunity to do so (Doc. #69), Virginia Jones did not file a Reply brief in support of her motion.   There are questions of fact as to whether Caton Jones used the Acura, and no other evidence has been provided by Virginia Jones to dispute that the transfers benefitted Virginia Jones.   Because JBE was owned by Robert Jones, Jr. in 2014, there are questions of fact as to whether JBE was an alter ego of Robert Jones, Jr. at the time of the transfers.   The court concludes, therefore, that questions of fact preclude summary judgment as to the transfers to Honda Finance.

Virginia Jones also moves for summary judgment as to transfers of $12,402.74 which were premium payments to BlueCross and BlueShield for her health insurance coverage.   She argues that the transfers were made by JBE, not a debtor, and that the transfers cannot be a fraudulent transfer because insurance premiums paid as salary do not qualify as an asset under the AUFTA.   She provides the Affidavit of Robert Jones, Jr. in which he states that he was employed with JBE and that his salary includes the payment of his wife's health insurance. (Doc. #67-4).   Virginia Jones cites to Ala. Code §6-10-7 for the proposition that 75% of wages and compensation are exempted from levy.

Wheeler Bros. argues that these transfers are not protected under Alabama law because they are transfers to Robert Jones, Jr. for the benefit of Virginia Jones and are not payment of wages to Virginia Jones.   Wheeler Bros. argues that JBE was just an alter ego for Robert Jones, Jr., so the transfers are a transfer by the debtor to himself, benefitting Virginia Jones, and, therefore, cannot be consider exempt wages.   Wheeler Bros. argues that transfers to Virginia Jones were not made in exchange for any services provided to JBE.

The definition of "asset" under Ala. Code §8-9A-1 states that it is property of the debtor

30

but does not include property to the extent that it is exempt under non-bankruptcy law. Ala. Code §8-9A-1(2); *see also Flirt v. Kirkpatrick*, 278 Ala. 61, 64, 175 So. 2d 755, 758 (1965) (stating that "[a] sale or other disposition of property which is by law exempt from payment of debts cannot be impeached by creditors as fraudulent, since creditors cannot be deemed concerned with property not subject to their demands.").    Ala. Code §6-10-7 is an exemption.   The plain language of the AUFTA says that a transfer has to be of an asset, and an asset does not include property exempt under nonbankruptcy law.   There is apparently no dispute that money was spent on insurance premiums by JBE for Virginia Jones' benefit.   Virginia Jones has provided affidavit evidence that the money was spent as compensation to Robert Jones, Jr. and there is no evidence which contradicts that evidence.[4]   If the money is not an asset, then it does not fall within the AUFTA, and so the court does not engage in the for value or good-faith analysis of the statute.

Summary judgment is, therefore, due to be GRANTED as to Virginia Jones to the extent that insurance premiums are exempt under Alabama law as compensation to Robert Jones, Jr.

## V. CONCLUSION

For the reasons discussed,

1.    The Motion for Partial Summary Judgment (Doc. #62) is GRANTED and judgment

is entered in favor of Wheeler Bros., Inc. and against Robert L. Jones, Jr. and

---

[4] No Defendant has invoked Ala. Code §6-10-7 in the separately-filed Motion for Summary Judgment of Less Than All Defendants; however, as noted, there are questions of fact precluding summary judgment on the issue of whether money was paid as compensation for services to various other Defendants.

Advanced Fleet Services, LLC pursuant to the Parts Agreement and Personal

Guaranty in the amount of $794,530.13 plus interest at the rate of five percent per

month and attorneys' fees to be determined at the conclusion of the case.

2. The Motion for Summary Judgment of Less Than All Defendants (Doc. #66) is

DENIED.

3. The Motion for Summary Judgment (Doc. #67) filed by Defendant Virginia Jones is

GRANTED and Judgment is entered in favor of Virginia Jones and against Wheeler

Bros. to the extent that insurance premiums are exempt under Alabama law as

compensation to Robert Jones, Jr.   The motion is DENIED in all other respects.

**DONE AND ORDERED** in Orlando, Florida on March 4, 2016.


PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

32