# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

WHEELER BROS., INC.,

      Plaintiff,

v.                                 Case No: 2:14-cv-1258-PGB-TFM

ROBERT L. JONES, JR., VIRGINIA
JONES, ADVANCED FLEET SERVICES,
LLC, ROBERT L. JONES, III, JONATHAN
CATON JONES, PIRATES TOW, LLC,
LAVENIA A. JONES, ROBERT L.
JONES, SR., A&B DEVELOPMENTS,
LLC, A&B PROPERTIES, LLC, BEST
BUY AUTOMOTIVE & TIRES, LLC,
JONES BROTHERS ENTERPRISES,
LLC, and KYLE BREECE JONES,

      Defendants.

---

## MEMORANDUM OF DECISION

This cause comes before the Court following a one-day bench trial conducted on March 13, 2017.[1] Having considered the pleadings, evidence, arguments, and relevant legal authority, and having made determinations on the credibility of the witnesses, the Court now announces its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.

---

[1] The Court offers three introductory notes regarding the conduct of trial. First, this cause was originally set to be tried by a jury. However, during a telephonic status conference held on March 10, 2017, all prior demands for a jury trial were withdrawn and the parties stipulated to proceed to a bench trial. (Doc. 168). Second, one of the Defendants, Jonathan Caton Jones, filed for bankruptcy protection four days before the start of trial. Since the automatic stay had not been lifted by the time trial began, the Court stayed all claims against Jonathan Caton Jones and proceeded as to the remaining Defendants. (*Id.*). Third, none of the Defendants appeared at trial. Counsel for Defendants (who did appear at trial) informed the Court that their clients requested that counsel not defend against Plaintiff's claims in any way. As a result, Defendants did not participate in opening statements or closing arguments, did not object to Plaintiff's evidence or cross-examine Plaintiff's witnesses, and did not mount a case-in-chief.

# TABLE OF CONTENTS

**INTRODUCTION** ............................................................................................................ 3

**APPLICABLE LAW** ....................................................................................................... 4

    Subject Matter Jurisdiction ......................................................................................... 4

    The Alabama Uniform Fraudulent Transfer Act .......................................................... 5

    Piercing the Corporate Veil and Alter Ego ................................................................. 9

**FINDINGS OF FACT** .................................................................................................. 11

    The Parties ................................................................................................................ 11

    Wheeler's Business With AFS and Junior ................................................................ 13

    Tracking the Money .................................................................................................. 16

        *Testimony of Richard Harbin* ............................................................................. 16

        *Testimony of Tara Gearhart* ............................................................................. 22

**CONCLUSIONS OF LAW** .......................................................................................... 36

    Subject Matter Jurisdiction ....................................................................................... 36

    Breach of Contract, Unjust Enrichment, and Breach of Guaranty .............................. 36

    Piercing the Corporate Veil and Alter Ego ............................................................... 36

    Fraudulent Transfers—Actual Fraud ........................................................................ 38

    Fraudulent Transfers—Constructive Fraud as to Present Creditors .......................... 53

    Fraudulent Transfers—Constructive Fraud as to Present and Future Creditors ........ 73

    Who Owes What ....................................................................................................... 90

# INTRODUCTION

1. This dispute arises out of a contractual debt owed to Plaintiff and Defendants' subsequent actions to evade the payment of that debt.

2. Plaintiff initiated this lawsuit on December 30, 2014 by filing a forty-five-count Complaint. In Counts I, II, and III, Plaintiff alleges claims for the breach of a sales contract, unjust enrichment relating to the goods that were the subject of the sales contract, and for the breach of a personal guaranty of the sales contract, respectively. In Counts IV through XLIV, Plaintiff seeks to avoid fraudulent transfers of assets by Defendants pursuant to the Alabama Uniform Fraudulent Transfer Act ("AUFTA"), Ala. Code §§ 8-9A-1 to -12. Lastly, in Count XLV, Plaintiff seeks to pierce the corporate veils of the Defendant limited liability companies and to disregard those companies as the alter egos of the individual Defendants who own and operate them, so as to impose direct liability against the individual Defendants for the fraudulent transfers alleged in Counts IV through XLIV.

3. On March 4, 2016, the Court entered summary judgment in favor of Plaintiff on Counts I, II, and III of the Complaint. (Doc. 109). Accordingly, this matter proceeded to trial on Counts IV through XIX (except that portion of Count X alleged against Jonathan Caton Jones), Counts XXI through XXV, Counts XXVII through XXXI, Counts XXXIII through XXXIX, and Counts XLI through XLV (except that portion of Count XLV alleged against Jonathan Caton Jones).

<u>Subject Matter Jurisdiction</u>

4.　　Federal courts are courts of limited jurisdiction, meaning that they are conscribed to hearing only those types of cases and controversies enumerated by Article III of the United States Constitution or otherwise granted to them by the United States Congress. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999). A federal court has the power to examine its subject matter jurisdiction at any time during the proceedings, and may raise the issue on its own initiative. *Id.* at 410. A federal court is powerless to hear a case over which it lacks subject matter jurisdiction. *Id.*

5.　　Federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a)(1). An individual is a citizen of the state in which he or she is domiciled, which is the state where the individual maintains his or her "true, fixed, and permanent home." *McCormick v. Aderholt*, 293 F.3d 1254, 1257–58 (11th Cir. 2002) (per curiam) (quoting *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974)). A corporation is a citizen of the state in which it is incorporated and the state in which the corporation's principal place of business is located. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021 n.1 (11th Cir. 2004) (per curiam). Unincorporated business entities, such as limited liability companies, are citizens of every state in which each of its individual members are citizens. *Id.* at 1022. Diversity of citizenship "must be present at the time the complaint is filed"

in order to invoke a federal court's subject matter jurisdiction under § 1332. *Mas*, 489 F.2d at 1399.[2]

<u>The Alabama Uniform Fraudulent Transfer Act</u>

6.  The AUFTA provides a cause of action for a creditor to avoid a fraudulent transfer of assets made by a debtor. *See* Ala. Code. § 8-9A-7(a)(1).

7.  A "creditor" is "[a] person who has claim," *id.* § 8-9A-1(4), and a "debtor" is "[a] person who is liable on a claim," *id.* § 8-9A-1(6). A "claim" is "[a] right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 8-9A-1(3).

8.  Under the AUFTA, the word "transfer" means "[e]very mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." *Id.* § 8-9A-1(13).

9.  The AUFTA distinguishes between actual fraud and constructive fraud in characterizing the nature of a transfer made by a debtor and sought to be avoided by a creditor.

10. A transfer of assets is the result of actual fraud when "the debtor [makes] the transfer with actual intent to hinder, delay, or defraud any creditor." *Id.* § 8-9A-4(a). The AUFTA provides a non-exhaustive list of factors—commonly referred to as "badges of fraud"—to consider when determining whether a debtor made a

---

[2]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit that were handed down prior to October 1, 1981.

transfer "with actual intent to hinder, delay, or defraud."  Those factors include

whether:

(1)   The transfer was to an insider;

(2)   The debtor retained possession or control of the property
transferred after the transfer;

(3)   The transfer was disclosed or concealed;

(4)   Before the transfer was made the debtor had been sued
or threatened with suit;

(5)   The transfer was of substantially all the debtor's assets;

(6)   The debtor absconded;

(7)   The debtor removed or concealed assets;

(8)   The value of the consideration received by the debtor
was reasonably equivalent to the value of the asset
transferred;

(9)   The debtor was insolvent or became insolvent shortly
after the transfer was made;

(10)  The transfer occurred shortly before or shortly after a
substantial debt was incurred; and

(11)  The debtor transferred the essential assets of the
business to a lienor who transferred the assets to an
insider of the debtor.

*Id.* § 8-9A-4(b).

11.   A transfer of assets is constructively fraudulent in one of three scenarios.  First,

A transfer made by a debtor is fraudulent as to a creditor,
whether the creditor's claim arose before or after the transfer
was made, if the debtor made the transfer without receiving a
reasonably equivalent value in exchange for the transfer and
the debtor:

(1)   Was engaged or was about to engage in a business
or a transaction for which the remaining assets of the
debtor were unreasonably small in relation to the
business or transaction; or

> (2)   Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

*Id.* § 8-9A-4(c).  Second,

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer.

*Id.* § 8-9A-5(a).  Third,

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt and the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

*Id.* § 8-9A-5(b).

12.   For a debtor who is an individual, the term "insider" includes "[a] relative of the debtor" and "[a] corporation in which the debtor is a director, officer, or person in control."  *Id.* § 8-9A-1(8)(a).   For a debtor who is a corporate entity, the term "insider" includes a "director," "officer," or "person in control" of the debtor and any "relative of a . . . director, officer, or person in control of the debtor."  *Id.* § 8-9A-1(8)(b).

13.   "A debtor is insolvent if the sum of the debtor's debts is greater than all the debtor's assets at a fair valuation."  *Id.* § 8-9A-2(a).  "A debtor who is generally not paying his debts as they become due is presumed to be insolvent."  *Id.* § 8-9A-2(b).

14.   Whether a debtor receives "reasonably equivalent value" for a transaction is determined from the viewpoint of the debtor's creditors.  *SE Prop. Holdings, LLC v. Center*, No. 15-0033-WS-C, 2016 WL 7493623, at *9 (S.D. Ala. Dec. 30, 2016).

"Consideration having no utility from a creditor's viewpoint does not satisfy the statutory definition [of 'reasonably equivalent value']." *Id.* (alterations omitted). Stated differently, "the 'touchstone' of the 'reasonably equivalent value' analysis is 'whether the parties exchanged comparable realizable commercial value.'" *Id.* at *9 n.16 (quoting *In re David Cutler Indus., Ltd.*, 502 B.R. 58, 73 (Bankr. E.D. Pa. 2013)). A debtor who gives nothing of intrinsic monetary value in exchange for an asset has not given "reasonably equivalent value." *See id.* at *9–10; Ala. Code § 8-9A-3(a) (excluding from the definition of "reasonably equivalent value" unperformed promises to provide future support to the debtor or to a third person on the debtor's behalf).

15. To avoid a fraudulent transfer of assets based on actual fraud under § 8-9A-4(a), a plaintiff must prove two elements: (1) the plaintiff is a creditor of the defendant, and (2) the defendant transferred an asset or an interest in an asset with the actual intent to injure, delay, or defraud the plaintiff or any other creditor. 1 Ala. Pattern Jury Instr. Civ. 18.22.

16. To avoid a constructively fraudulent transfer of assets under § 8-9A-4(c), a plaintiff must prove three elements: (1) the plaintiff is a creditor of the defendant, (2) the defendant transferred an asset or an interest in an asset without receiving reasonably equivalent value in exchange, and either (3)(a) the defendant intended to incur (or believed or reasonably should have believed that he would incur) debts beyond his ability to pay, or (3)(b) the defendant was engaged or was about to engage in a business transaction for which the defendant's remaining assets were unreasonably small in relation. 1 Ala. Pattern Jury Instr. Civ. 18.21.

17. To avoid a constructively fraudulent transfer of assets under § 8-9A-5, a plaintiff must prove three elements: (1) the plaintiff is a creditor of the defendant, (2) the plaintiff's claim arose before the defendant made the transfer at issue, and either (3)(a) the defendant made the transfer without receiving reasonably equivalent value in exchange and the defendant was insolvent when he made the transfer or became insolvent as a result of the transfer, or (3)(b) the transfer was made to an insider for an antecedent debt, the defendant was insolvent when he made the transfer, and the insider had reasonable cause to believe that the defendant was insolvent when he made the transfer.  1 Ala. Pattern Jury Instr. Civ. 18.20.

18. The plaintiff who prevails against a debtor for having made a fraudulent transfer "may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the [plaintiff's] claim, whichever is less."  The judgment may be entered against the first transferee of the asset, the person for whose benefit the transfer was made, or any subsequent transferee of the asset other than a good faith transferee who took the asset either for value or from a first subsequent transferee.  Ala. Code. § 8-9A-8(b).

## Piercing the Corporate Veil and Alter Ego

19. The general rule is that a corporation is a distinct legal entity form the individuals who own and operate the corporation; as a result, a corporation's owners and operators ordinarily are not responsible for acts committed by the corporate entity. *Cohen v. Williams*, 318 So. 2d 279, 281 (Ala. 1975).

20. However, Alabama law recognizes a well-established equitable exception to the general rule that owners and operators of a corporation are not responsible for the

corporation's acts. When the owner or operator of a corporation uses the corporation for the sole purpose of avoiding personal liability, it is said that the corporation is merely the "alter ego" of the owner or operator, and the corporate entity may be disregarded—that is, the corporate "veil" may be "pierced"—and liability may be imposed directly against the owner or operator for the corporation's acts. *Hill v. Fairfield Nursing & Rehab. Ctr., LLC*, 134 So. 3d 396, 407 (Ala. 2013).

21.    It is well-settled that the doctrines of piercing the corporate veil and alter ego apply equally where the business entity at issue is a limited liability company. *Mama's Enters., LLC v. United States*, 883 F. Supp. 2d 1128, 1134–35 (N.D. Ala. 2012); *see also Hill*, 134 So. 2d at 411 (applying the doctrines of piercing the corporate veil and alter ego to a limited liability company).

22.    To pierce the corporate veil and impose liability against a member or manager of a limited liability company, a plaintiff must prove three elements: (1) the member or manager exercised complete control and dominion over the company's finances, policies, and business practices such that the company "had no separate mind, will, or existence of its own," (2) the member or manager misused his or her control and dominion over the company, and (3) the misuse caused the plaintiff's injuries. *Messick v. Moring*, 514 So. 2d 892, 894–95 (Ala. 1987).

23.    The question of whether to pierce the corporate veil and impose liability against a member or manager of a limited liability company is fact-intensive and must be resolved on a case-by-case basis. *Hill*, 134 So. 3d at 411. A non-exhaustive list of factors to consider when answering the question include: (1) whether the member or manager is the sole individual who owns and operates the company;

(2) whether the company was set up as a means to evade or defraud creditors; (3) whether the member or manager observes the corporate form; (4) whether the company adheres to the laws governing its existence; (5) whether the company maintains regular business records; (6) whether the company maintains its own bank account; (7) whether the company has any employees; (8) whether the member or manager comingles his personal funds and assets with the company's funds and assets; (9) whether the member or manager uses the company's funds and assets for personal purposes; (10) whether the member or manager drains the company of its funds and assets; and (11) whether the member or manager holds himself or herself out as the company or confuses his or her identity with the company's identity. *See S. Ala. Pigs, LLC v. Farmer Feeders, Inc.*, 305 F. Supp. 2d 1252, 1258 (M.D. Ala. 2004); *Simmons v. Clark Equip. Credit Corp.*, 554 So. 2d 398, 401 (Ala. 1989).

## FINDINGS OF FACT

### The Parties

24. Plaintiff, Wheeler Bros., Inc. ("Wheeler"), is a Pennsylvania corporation with its principal place of business located in Pennsylvania. (Compl. ¶ 3; Pl.'s Ex. 239).

25. Defendant, Robert L. Jones, Sr. ("Senior"), is an individual who was domiciled in the State of Alabama at the time this lawsuit was commenced. (Pl.'s Ex. 227, 9:21–23, 79:19–80:18)

26. Defendant, Robert L. Jones, Jr. ("Junior"), is an individual who was domiciled in the State of Alabama at the time this lawsuit was commenced. (Pl.'s Ex. 229, 128:5–15; Pl.'s Ex. 230, 350:8–12).

27. Defendant, Robert L. Jones, III ("Laslie"), is an individual who was domiciled in the State of Alabama at the time this lawsuit was commenced. (Pl.'s Ex. 233, 7:20–9:5).

28. Defendant, Virginia Jones ("Virginia"), is an individual who was domiciled in the State of Alabama at the time this lawsuit was commenced. (Pl.'s Ex. 228, 17:18–18:10).

29. Defendant, Lavenia A. Jones ("Ann"), is an individual who was domiciled in the State of Alabama at the time this lawsuit was commenced. (Pl.'s Ex. 226, 17:13–19).

30. Defendant, Kyle Breece Jones ("Kyle"), is an individual who was domiciled in the State of Alabama at the time this lawsuit was commenced. (Pl.'s Ex. 232, 17:1–20:15).

31. Defendant, Advanced Fleet Services, LLC ("AFS"), is an Alabama limited liability company. Junior is the sole member and owner of AFS. (Pl.'s Ex. 309).

32. Defendant, Pirates Tow, LLC ("Pirates Tow"), is an Alabama limited liability company. Jonathan Caton Jones is the sole member and owner of Pirates Tow. (Pl.'s Ex. 314). Jonathan Caton Jones is an individual who was domiciled either in the State of Alabama or the State of Arkansas at the time this lawsuit was commenced. (Pl.'s Ex. 234, 6:4–17, 11:10–17:7).

33. Defendant, A&B Properties, LLC ("A&B Properties"), is an Alabama limited liability company. Junior and Senior are the only members of A&B Properties. Junior and Senior each hold a 50% ownership interest in A&B Properties. (Pl.'s Ex. 311).

34. Defendant, A&B Developments, LLC ("A&B Developments"), is an Alabama limited liability company. (Pl.'s Ex. 250, p. 3). Senior and Ann are the only members of A&B Developments. Ann holds a 99% ownership interest in A&B Developments, while Senior owns the remaining 1%. (Pl.'s Ex. 310).

35. Defendant, Best Buy Automotive & Tires, LLC ("Best Buy"), is an Alabama limited liability company. Senior and Ann are the only members of Best Buy. Senior and Ann each hold a 50% ownership interest in Best Buy. (Pl.'s Ex. 312).

36. Defendant, Jones Brothers Enterprises, LLC ("JBE"), is an Alabama limited liability company. Laslie is the sole member and owner of JBE. (Pl.'s Ex. 313).

37. The individual Defendants are all related to each other either by blood or by marriage. Senior is married to Ann, and Junior is their son. Junior is married to Virginia, and Laslie is their son. Laslie is married to Kyle. (Tr. 90:2–25).

## Wheeler's Business With AFS and Junior

38. Wheeler designs, manufactures, and distributes motor vehicle parts. In 1989, the United States Postal Service ("USPS") awarded Wheeler a national ordering agreement through which USPS purchased Wheeler's parts to service its national fleet of postal vehicles. (Tr. 20:3–22:5).

39. At some point, USPS found that it could no longer keep up with the maintenance of its vehicles and needed to find a way to take care of its overflow maintenance needs. Seeing an opportunity, Junior approached Wheeler with the idea that Wheeler should contract with his company, AFS, to perform the labor aspect of USPS's overflow maintenance work. AFS would open a number of facilities in

different states and Wheeler would sell AFS the parts it needed to repair USPS's vehicles. (Tr. 22:6–16).

40. On October 15, 2010, Wheeler and AFS executed a Parts Sale Agreement (the "Agreement") memorializing the terms of their arrangement. On December 28, 2010, Junior executed an unconditional personal guaranty in which he assumed full responsibility for AFS's performance of the Agreement. Junior's execution of the personal guaranty was a necessary condition for Wheeler entering into the Agreement with AFS. (Tr. 22:20–24:14; Pl.'s Exs. 239, 348).

41. AFS breached the Agreement from the outset by failing to pay for Wheeler's parts as required, and AFS never became current on its contractual obligations. (Tr. 25:4–10, 30:7–11).

42. Nevertheless, Wheeler continued to sell parts to AFS pursuant to the terms of the Agreement due to AFS's representations of profitability and viability as a business. Specifically, on October 25, 2011, Junior emailed Wheeler a copy of AFS's income and balance sheet as of July 31, 2011. The income and balance sheet reflected that AFS had received $4,733,322.23 in total revenues for a gross profit of 59.22% and retained $414,256.88 for a net profit of 8.75%. Additionally, on April 18, 2012, Junior emailed Wheeler "to discuss . . . a plan to get the pay issue put to bed once and for all." To that end, Junior revealed that AFS was opening a new service center in Milwaukee, Wisconsin and that the earnings realized from AFS's new business would be used to satisfy its debt with Wheeler. (Tr. 27:23–29:25, 30:14–31:2; Pl.'s Exs. 179, 431).

43. Notwithstanding Junior's and AFS's representations, AFS remained delinquent with Wheeler throughout the entirety of the parties' business relationship. Wheeler found it a "constant struggle" to collect money from AFS. In mid-August 2012, Wheeler ultimately stopped selling parts to AFS due to nonpayment. By that time, AFS (and Junior as personal guarantor) owed Wheeler $794,530.13 in principal, along with interest as provided by the Agreement. (Tr. 30:7–11, 31:15–19, 32:8–18; Pl.'s Ex. 357, p. 90).

44. Additionally, Wheeler later learned that AFS never opened the service center in Milwaukee as Junior represented; instead, Junior, Senior, and Laslie opened the service center using a different company name. (Tr. 31:3–14).

45. On August 31, 2012, Junior and his wife, Virginia, filed for bankruptcy. In their bankruptcy schedule, Junior and Virginia disclosed $5,375,000 in liabilities and $1,422,000 in assets. Junior and Virginia additionally valued AFS at $1.00. (Tr. 33:24–34:14; Pl.'s Ex. 43).

46. Following Junior and Virginia's filing for bankruptcy, Wheeler retained legal counsel and other qualified professionals to determine where all of AFS's money went. (Tr. 34:15–35:5).

47. On February 4, 2013, Wheeler filed an adversary complaint in Junior and Virginia's bankruptcy proceeding in order to render Junior's debt to Wheeler non-dischargeable. Wheeler alleged that Junior fraudulently transferred money and assets to family members and to a number of associated business entities in an effort to avoid paying the debt owed to Wheeler. On August 4, 2013, the bankruptcy court entered default judgment against Junior due to his destruction of

evidence during discovery and repeated non-compliance with court orders. The bankruptcy court consequently determined that Junior's debt to Wheeler could not be discharged in bankruptcy. (Pl.'s Ex. 240).

Tracking the Money

48. At trial, Wheeler called two witnesses who contributed to explaining where AFS's money went.

*Testimony of Richard Harbin*

49. The first witness Wheeler called was Richard Harbin. Mr. Harbin is an expert in computer systems design and forensics who Wheeler retained to retrieve accounting files, email communications, and other records and information from Defendants' computer systems. (Tr. 36:21–41:9).

50. In February 2014, Mr. Harbin conducted several visits to the facility where AFS, JBE, and Pirates Tow operated their businesses in order to retrieve the files and documents Wheeler wanted to review. During the first visit, Mr. Harbin was "turned around at the door and told to go back home," despite the companies' knowledge that Mr. Harbin would be arriving that day to retrieve the data Wheeler sought. (Tr. 41:10–42:13).

51. After reaching an agreement, Mr. Harbin returned a few days later, where he was met by Junior, Laslie, and a computer assistant. Mr. Harbin commented at trial that Laslie was very involved with the numerous businesses. Mr. Harbin described Laslie as "the keeper of the keys," holding the passwords to all of the accounting files for AFS, JBE, Pirates Tow, and Best Buy. (Tr. 42:14–22, 44:15–45:10).

52. During this second visit, Mr. Harbin explained to Laslie that he required the companies' accounting files, backup files, and email files. Mr. Harbin handed the computer assistant USB drives to upload the information requested, and he oversaw the copying of data. After the data had been copied to the USB drives, Mr. Harbin was assured that he was receiving complete copies of everything he was required to retrieve. (Tr. 42:14–43:11).

53. However, the information copied to the USB drives was incomplete. Large swaths of emails were missing; most notably, an email folder titled "Wheeler" contained zero messages. Mr. Harbin concludes that the emails from this folder were purposely removed. Moreover, the backup files produced were not representative of the main accounting files, again indicating that information from the main accounting files had been removed. Further still, many of the passwords Laslie provided to Mr. Harbin did not work, and Mr. Harbin was forced to circumvent the password mechanism in order to access certain files. (Tr. 43:12–44:14, 45:11–46:1).

54. After Mr. Harbin determined that Junior and Laslie had failed to produce all of the information sought, Wheeler obtained an order from the bankruptcy court directing compliance. With this order in hand, Mr. Harbin visited the facility a third time. (Tr. 46:5–23).

55. However, Junior continued to impede Mr. Harbin's retrieval of data. Junior protested when Mr. Harbin attempted to access certain files, despite the fact that the files were subject to the bankruptcy court's order. Junior also prohibited Mr. Harbin from powering down AFS's servers, stating that both JBE and Best Buy

operated off of AFS's servers and would therefore be adversely impacted were the servers to be powered down. Although Mr. Harbin was able to retrieve significant data, he was unable to obtain all of the information that was subject to the bankruptcy court's order due to Junior's obstruction. (Tr. 47:17–50:7, 51:4–16, 52:20–53:6, 56:24–59:15; Pl.'s Ex. 267).

56. When Mr. Harbin later analyzed the data he was able to recover from AFS's servers, he noticed that an email account associated with AFS was one of the most utilized email accounts on the servers. This account operated as a "catchall" account to which every email that was sent or received through AFS's servers was automatically copied. As a result, AFS received copies of all emails associated not only with itself, but also with JBE, Pirates Tow, and Best Buy. (Tr. 53:7–55:2; Pl.'s Ex. 270).

57. Mr. Harbin additionally testified that he noticed certain trends in the use of AFS's servers. Before Junior filed for bankruptcy, AFS's servers were being used regularly. However, in the eight to nine months leading up to Junior's bankruptcy, the use of AFS's servers dropped close to zero. Coincidentally, Mr. Harbin was unable to recover any emails from AFS's servers during this eight- to nine-month period. Additionally, as the use of AFS's servers declined, there was a significant increase in the use of a JBE-related account, indicating that the use which was previously attributed to AFS's servers had shifted to an off-site JBE-related server that was inaccessible to Mr. Harbin. Based on these trends, Mr. Harbin believes that AFS was in the process of transitioning its business to JBE immediately prior to Junior filing for bankruptcy. (Tr. 55:18–56:23).

58.	What was not retrieved from AFS's servers is also significant.  Although Mr. Harbin identified a Toshiba copier on AFS's servers, he was unable to retrieve any data from the copier.  As Mr. Harbin explained:

> The copier is normally the hub of all document transfer in a business. You scan stuff to everybody and everybody scans stuff to you. And since that copier did not have an email account—it wasn't a person—[the] only thing it would do is just send out. So [the Toshiba copier] had no sent items . . . .

(Tr. 58:16–59:3).

59.	Mr. Harbin also could not retrieve any information from an email account assigned to JBE's comptroller, Jill Moncrief.  Laslie later revealed that he deleted Ms. Moncrief's account along with another email account because they were not being used and JBE needed the accounts for the Toshiba copier to work properly.  However, Ms. Moncrief's account was the most used account at JBE, and Laslie deleted both accounts within twelve hours of Mr. Harbin testifying in front of the bankruptcy court about the importance of the accounts, thus contradicting Laslie's proffered reasons for deleting them.  It is Mr. Harbin's professional opinion that Laslie purposely and maliciously deleted these accounts.  (Tr. 59:4–60:13, 65:5–8; Pl.'s Ex. 249).

60.	Mr. Harbin further noticed in his analysis of the data that the vast majority of the emails associated with AFS had been deleted.  According to the logs retrieved from AFS's servers, Mr. Harbin expected to recover approximately 149,000 emails from AFS's email account.  However, when access to the account was finally given, only 3,800 emails remained.  The email account was functioning properly and was not programmed to automatically deleting emails as the account became

full. Mr. Harbin therefore concludes that someone purposely deleted approximately 145,000 emails from AFS's account. (Tr. 62:2–65:4).

61. It was additionally determined from the data retrieved from AFS's servers that JBE, Pirates Tow, and Best Buy shared space on AFS's servers, that AFS, JBE, Pirates Tow, and Best Buy all utilized the same accounting files, and that all of the companies could access each other's accounting information and exercise full control over AFS's servers. Moreover, the companies would all use the same letterheads, checks, invoices, etc. within the accounting programs, but would simply change the name of the company on each document as needed. Mr. Harbin characterized these practices as ill-advised, not in compliance with standard accounting principles, and inconsistent with any notion that the companies operated independently of each other. (Tr. 65:9–68:16).

62. In addition to sharing servers and accounting files, JBE stored its own company files, proprietary product designs, and day-to-day documents on AFS's servers. In fact, AFS and JBE had access to each other's proprietary product designs and actually utilized the same designs to manufacture the exact same parts. (Tr. 69:8–70:15).

63. Best Buy similarly had access to and full control over AFS's servers, used AFS's servers to conduct business and used AFS's email accounts. (Tr. 70:16–71:18).

64. Mr. Harbin visited AFS's facility again in May 2015 to collect more data from AFS's servers. This time, Mr. Harbin found Junior to be very accommodating, giving Mr. Harbin full access to all of AFS's servers and allowing Mr. Harbin to physically remove the servers from AFS's facility for a period of days. However, as Mr. Harbin

and his team began the process of removing the servers, Junior advised that the servers had been infected with a virus and were not operational.  Mr. Harbin found the whole encounter strange, as if it were a "trap": one year prior, Junior and Laslie had done everything they could to impede Mr. Harbin's inspection of AFS's servers; now Junior granted full and unrestricted access, only to later reveal that no information could ever be retrieved from the servers due to a virus.  It is noteworthy that, although AFS's servers were inoperable—presumably along with the files on those servers—AFS and JBE continued to do business without interruption, despite Junior's claim that there were no backups of the information stored on the servers.  (Tr. 73:21–77:23).

65.    In August 2015, Mr. Harbin visited a separate facility operated by Best Buy.  When he first arrived, Mr. Harbin was met by Senior, who informed Mr. Harbin that he would not be allowed to access any of Best Buy's computers until the weekend.  When Mr. Harbin returned that weekend, Senior provided Mr. Harbin access to three computers.  However, it appeared that none of the computers produced by Senior had ever been used by Best Buy.  There were no business-related files or emails on the computers, the operating systems had been installed recently, and the computers looked brand new, with no dust or other indications of use.  It is Mr. Harbin's professional opinion that Senior and Best Buy wiped the computers to prevent anyone from retrieving any information from them.  (Tr. 71:22–73:12).

66.    The Court finds that Mr. Harbin is a credible and knowledgeable witness and that his findings and conclusions are supported by the evidence.  The Court therefore

adopts Mr. Harbin's findings and conclusions as its own, including those findings and conclusions not specifically stated in this Memorandum of Decision.

*Testimony of Tara Gearhart*

67. The second witness Wheeler called was Tara Gearhart. Ms. Gearhart is a certified public accountant and fraud examiner with an expertise in forensic accounting. (Tr. 79:15–83:15).

68. Wheeler retained Ms. Gearhart to analyze Defendants' finances and determine where all of AFS's money went. To do so, Ms. Gearhart examined myriad documents, including accounting records, bank statements, emails, payroll registers, property appraisals, organizational documents, tax returns, loan agreements, and deposition transcripts. Much of the information Ms. Gearhart reviewed came from the data Mr. Harbin retrieved from AFS's servers. Ms. Gearhart ultimately submitted a report detailing her methodologies and conclusions. (Tr. 83:17–88:12; Pl.'s Ex. 247).

69. Based on her review of all of the evidence in this case, Ms. Gearhart made twelve specific Findings regarding where all of AFS's money and property went.

70. In Finding 1, Ms. Gearhart determined that AFS and Junior transferred a total of $311,333.20 in cash to Best Buy, Senior, and Ann. Broken down, AFS transferred $261,902.32 to Best Buy and $14,295.31 to Senior and Ann, while Junior transferred $23,135.57 to Best Buy and $12,000.00 to Senior and Ann. Because Senior and Ann owned Best Buy, they benefitted not just from the money transferred to them directly, but also from the money transferred to Best Buy. Best

Buy, Senior, and Ann gave nothing to AFS or Junior in exchange for the money they received.  (Tr. 94:3–21, 100:20–107:1).

71. In its answers to interrogatories submitted to Wheeler during discovery, AFS failed to accurately answer an interrogatory asking AFS to identify all money and property given to Best Buy during the time period at issue.  (Pl.'s Ex. 39).  In its answers to interrogatories submitted to Wheeler during discovery, Best Buy falsely represented that, during the time period at issue, it never received money, property, or any other benefit from AFS or Junior.  (Pl.'s Ex. 24).  In his answers to interrogatories submitted to Wheeler during discovery, Junior falsely represented that, during the time period at issue, he never gave money, property, or any other benefit to Best Buy, Senior, or Ann.  (Pl.'s Ex. 37).  In their answers to interrogatories submitted to Wheeler during discovery, Senior and Ann falsely represented that, during the time period at issue, they never received money, property, or any other benefit from AFS or Junior.  (Pl.'s Exs. 8, 19).  While under oath at their depositions, Senior, Ann, and Junior all confirmed the accuracy of these false representations.  (Pl.'s Ex. 226, 84:23–86:9; Pl.'s Ex. 227, 73:5–74:15, 115:18–117:6; Pl.'s Ex. 229, 61:12–62:20, 65:9–66:10).

72. In Finding 2, Ms. Gearhart determined that AFS transferred a total of $171,360.99 in cash to Pirates Tow.  Of this sum, Pirates Tow subsequently transferred $35,890.18 to Best Buy and $4,675.00 to Senior and Ann, and paid an additional $2,660.00 worth of credit card expenses on Ann's behalf.  Pirates Tow retained the remainder for itself.  Because Senior and Ann owned Best Buy, they benefitted not just from the money transferred to them directly or paid on their behalf, but also

from the money transferred to Best Buy. Pirates Tow, Senior, and Ann gave nothing to AFS in exchange for the money and benefits they received. (Tr. 94:22–95:7, 153:7–158:22).

73.    In its answers to interrogatories submitted to Wheeler during discovery, AFS failed to accurately answer an interrogatory asking AFS to identify all money and property given to Pirates Tow during the time period at issue. (Pl.'s Ex. 39). In its answers to interrogatories submitted to Wheeler during discovery, Pirates Tow falsely represented that, during the time period at issue, it never received money, property, or any other benefit from AFS. (Pl.'s Ex. 121). In its answers to interrogatories submitted to Wheeler during discovery, Best Buy falsely represented that, during the time period at issue, it never received money, property, or any other benefit from Pirates Tow. (Pl.'s Ex. 24). Best Buy additionally failed to disclose the money it received from Pirates Tow on its annual balance sheet. (Pl.'s Ex. 478). In their answers to interrogatories submitted to Wheeler during discovery, Senior and Ann falsely represented that, during the time period at issue, they never received money, property, or any other benefit from Pirates Tow. (Pl.'s Exs. 8, 19). While under oath at their depositions, Senior, Ann, and Junior[3] all confirmed the accuracy of these false representations. (Pl.'s Ex. 226, 84:23–86:9; Pl.'s Ex. 227, 73:5–74:15, 115:18–117:6; Pl.'s Ex. 229, 65:9–66:10; Pl.'s Ex. 231, 59:11–61:14).

---

[3]    Junior testified at two separate depositions. At one deposition, Junior testified in his personal capacity and as the corporate representative of AFS. At the second deposition, Junior testified as the corporate representative for Pirates Tow.

74. In Finding 3, Ms. Gearhart determined that AFS transferred an additional $275,764.08 to Pirates Tow in the form of inventory and the payment of expenses and payroll costs. In September 2012, Pirates Tow took over the management of a service center operated by AFS in Houston, Texas. As part of the change in management, Pirates Tow acquired all of AFS's inventory, equipment, accounts receivable, and accounts payable. However, Pirates Tow gave nothing to AFS in exchange, sold AFS's inventory to USPS for a profit, and retained all of the proceeds for itself. Pirates Tow ultimately received $63,160.58 worth of inventory from AFS for free. AFS also paid $79,909.56 worth of business expenses owed by Pirates Tow and paid $132,693.94 worth of payroll costs to Pirates Tow's employees. (Tr. 95:8–20, 158:23–168:8).

75. In its answers to interrogatories submitted to Wheeler during discovery, AFS failed to accurately answer an interrogatory asking AFS to identify all money and property given to Pirates Tow during the time period at issue. AFS also falsely represented that it was never involved with Pirates Tow's business. (Pl.'s Ex. 39). In its answers to interrogatories submitted to Wheeler during discovery, Pirates Tow falsely represented that, during the time period at issue, it was never involved with AFS's business and never received money, property, or any other benefit from AFS. (Pl.'s Ex. 121). While under oath at his deposition, Junior[4] confirmed the accuracy of these false representations. (Pl.'s Ex. 229, 65:9–66:10; Pl.'s Ex. 231, 59:11–61:14).

---

[4]. *See* footnote 3, *supra.*

76.    In Finding 4, Ms. Gearhart determined that AFS transferred $269,250.00 worth of equipment to JBE or for JBE's benefit.  AFS used some of this equipment to secure loans on JBE's behalf, for which JBE gave AFS nothing in exchange.  AFS transferred the remaining equipment directly to JBE, again for nothing in return.  JBE then sold this equipment at auction and retained the proceeds for itself.  Ms. Gearhart additionally found that AFS transferred $78,216.00 worth of equipment to Laslie, who then transferred the equipment to a company in which Senior received distributions.  Neither Laslie nor Senior gave anything in exchange for the benefits they received from AFS's transfers of equipment.  AFS transferred a total of $347,466.00 worth of equipment to or for the benefit of JBE, Laslie, and Senior for which it received nothing in return.  (Tr. 95:21–96:8, 142:8–153:6).

77.    In its answers to interrogatories submitted to Wheeler during discovery, AFS failed to accurately answer an interrogatory asking AFS to identify all property given to JBE during the time period at issue.  AFS also falsely represented that it was never involved with JBE's business, including never contributing to any loans taken out by JBE.  (Pl.'s Ex. 39).  In its answers to interrogatories submitted to Wheeler during discovery, JBE falsely represented that, during the time period at issue, it was never involved with AFS's business and never received money, property, or any other benefit from AFS.  (Pl.'s Ex. 138).  In their answers to interrogatories submitted to Wheeler during discovery, Laslie and Senior falsely represented that, during the time period at issue, they never received the property or any benefit from the property transferred from AFS or JBE.  Laslie also falsely represented that he never transferred property or an interest in property to Senior.  (Pl.'s Exs.

19, 134). While under oath at their depositions, Senior, Junior, and Laslie all confirmed the accuracy of these false representations. (Pl.'s Ex. 227, 73:5–74:15; Pl.'s Ex. 229, 65:9–66:10; Pl.'s Ex. 233, 18:11–19:13, 28:21–31:3).

78. In Finding 5, Ms. Gearhart determined that AFS transferred $383,762.00 worth of inventory to JBE and that JBE then sold the inventory to its customers. Because Laslie owned JBE, he benefitted from AFS's transfer of inventory. JBE subsequently transferred some of the proceeds earned from selling AFS's inventory to Junior and his family members, including Virginia, who received $6,242.75. JBE, Laslie, Junior, and the family members, including Virginia, gave nothing to AFS in exchange for the money, property, and benefits they received. (Tr. 96:9–97:4, 125:4–142:7).

79. In its answers to interrogatories submitted to Wheeler during discovery, AFS failed to accurately answer an interrogatory asking AFS to identify all property given to JBE during the time period at issue. AFS also falsely represented that it was never involved with JBE's business. (Pl.'s Ex. 39). In its answers to interrogatories submitted to Wheeler during discovery, JBE falsely represented that, during the time period at issue, it was never involved with AFS's business and never received money, property, or any other benefit from AFS. (Pl.'s Ex. 138). In their answers to interrogatories submitted to Wheeler during discovery, Laslie, Junior, and Virginia all falsely represented that, during the time period at issue, they never received money, property, or any other benefit from JBE. (Pl.'s Exs. 31, 37, 134). While under oath at their depositions, Laslie, Junior, and Virginia all confirmed the

accuracy of these false representations. (Pl.'s Ex. 228, 30:16–32:10; Pl.'s Ex. 229, 65:9–66:10; Pl.'s Ex. 233, 18:11–19:13).

80. In Finding 6, Ms. Gearhart determined that AFS and Junior transferred a total of $595,258.99 for the benefit of A&B Developments. AFS transferred the money to A&B Properties, which then used the money to reduce debts A&B Developments owed to third parties. A&B Developments gave nothing to either AFS or A&B Properties in exchange for AFS paying down A&B Developments' debts. As the sole owners of A&B Developments, Senior and Ann benefitted from AFS paying down A&B Developments' debts, but Senior and Ann did not give anything to AFS in exchange either. (Tr. 97:5–98:7, 119:7–125:3).

81. In its answers to interrogatories submitted to Wheeler during discovery, AFS failed to accurately answer an interrogatory asking AFS to identify all property given to A&B Properties and A&B Developments during the time period at issue. AFS also falsely represented that it was never involved with A&B Developments' business, including never contributing to A&B Developments' loans. (Pl.'s Ex. 39). In its answers to interrogatories submitted to Wheeler during discovery, A&B Developments falsely represented that, during the time period at issue, it never received money, property, or any other benefit from AFS or A&B Properties. (Pl.'s Ex. 361). In their answers to interrogatories submitted to Wheeler during discovery, Senior and Ann falsely represented that, during the time period at issue, they never received money, property, or any other benefit from Junior, AFS, or A&B Properties. (Pl.'s Exs. 8, 19). While under oath at their depositions, Senior,

Ann, and Junior all confirmed the accuracy of these false representations. (Pl.'s Ex. 226, 84:23–86:9; Pl.'s Ex. 227, 73:5–74:15; Pl.'s Ex. 229, 65:9–66:10).

82.  In Finding 7, Ms. Gearhart determined that AFS transferred $250,000.00 worth of equipment to a third party for the benefit of A&B Developments. AFS transferred the equipment in exchange for the third party reducing debt owed by A&B Developments. The third party then sold the equipment to JBE, which used the equipment for its own business. A&B Developments gave nothing to AFS in exchange for AFS using its equipment to pay down A&B Developments' debt. As the sole owners of A&B Developments, Senior and Ann benefitted from AFS paying down A&B Developments' debt, but Senior and Ann did not give anything to AFS in exchange either. (Tr. 98:8–20, 110:25–117:2).

83.  In its answers to interrogatories submitted to Wheeler during discovery, AFS failed to accurately answer an interrogatory asking AFS to identify all property given to A&B Developments or to any other party during the time period at issue. AFS also falsely represented that it was never involved with A&B Developments' business, including never contributing to A&B Developments' loans. (Pl.'s Ex. 39). In its answers to interrogatories submitted to Wheeler during discovery, A&B Developments falsely represented that, during the time period at issue, it never received any benefit from AFS or on behalf of AFS. (Pl.'s Ex. 361). In their answers to interrogatories submitted to Wheeler during discovery in this case, Senior and Ann falsely represented that, during the time period at issue, they never received any benefit from AFS or on behalf of AFS. (Pl.'s Exs. 8, 19). While under oath at their depositions, Senior, Ann, and Junior all confirmed the accuracy of

these false representations. (Pl.'s Ex. 226, 84:23–86:9; Pl.'s Ex. 227, 73:5–74:15; Pl.'s Ex. 229, 65:9–66:10).

84. In Finding 8, Ms. Gearhart determined that A&B Properties transferred $189,533.84 worth of real property to Best Buy. A&B Properties sold the real estate, which had an appraised value of $690,000.00, to Best Buy for only $310,932.33. Since Junior held a 50% ownership interest in A&B Properties, Ms. Gearhart divided the difference between the property's appraised value and sale value by two to calculate the value of the transfer attributable to Junior.[5] Best Buy gave nothing to A&B Properties in exchange for the $189,533.84 discount. As the sole owners of Best Buy, Senior and Ann benefitted from A&B Properties' discount, but Senior and Ann did not give anything to A&B Properties in exchange. (Tr. 98:21–99:6, 107:8–110:24).

85. In its answers to interrogatories submitted to Wheeler during discovery, A&B Properties falsely represented the nature of its transaction with Best Buy, claiming that the value of the property "was equal or less than the consideration paid by Best Buy." (Pl.'s Ex. 243). In its answers to interrogatories submitted to Wheeler during discovery, Best Buy falsely represented that, during the time period at issue, it never received any benefit from A&B Properties. Best Buy also falsely represented the nature of its transaction with A&B Properties, claiming that it assumed complete ownership of the property pursuant to a refinancing agreement to avoid foreclosure. (Pl.'s Ex. 24). In their answers to interrogatories submitted to Wheeler during discovery, Senior and Ann falsely represented that, during the

---

[5]. ($690,000.00 − $310,932.33) ÷ 2 = $189,533.84.

time period at issue, they never received property, an interest in property, or any other benefit from A&B Properties. (Pl.'s Exs. 8, 19). While under oath at their depositions, Senior, Ann, and Junior all confirmed the accuracy of these false representations. (Pl.'s Ex. 226, 84:23–86:9; Pl.'s Ex. 227, 73:5–74:15, 115:18–117:6; Pl.'s Ex. 229, 65:9–66:10).

86. In Finding 9, Ms. Gearhart determined that AFS transferred a total of $8,000.00 in cash to Kyle, $26,000.00 in payroll payments to Ann, and $40,000.00 in payroll payments to Laslie, for a total of $74,000.00 worth of transfers.[6] Kyle, Ann, and Laslie gave nothing to AFS in exchange for these cash and payroll payments. In fact, neither Ann nor Laslie worked for AFS when they received the payroll payments. (Tr. 99:7–18, 170:5–173:20).

87. In her answers to interrogatories submitted to Wheeler during discovery, Kyle falsely represented that, during the time period at issue, she received no monetary benefit from AFS. (Pl.'s Ex. 124). In her answers to interrogatories submitted to Wheeler during discovery, Ann falsely represented that, during the time period at issue, she received no income or other monetary benefit from AFS. (Pl.'s Ex. 8). While under oath at their depositions, Kyle and Ann confirmed the accuracy of these false representations. (Pl.'s Ex. 226, 84:23–86:9; Pl.'s Ex. 232, 27:21–29:15). Kyle also falsely testified at her deposition that, while she received her health insurance from AFS, AFS never gave her money. (Pl.'s Ex. 232, 65:20–22).

---

[6] Ms. Gearhart also determined that AFS gave other valuable benefits to Junior's relatives for nothing in exchange, including paying for their health and automobile insurance premiums. However, Ms. Gearhart did not include the value of these payments in her $74,000.00 calculation.

88.     In Finding 10, Ms. Gearhart determined that A&B Properties transferred $11,925.00 to JBE.  A&B Properties issued checks to JBE totaling $23,850.00.  Since Junior held a 50% ownership interest in A&B Properties, Ms. Gearhart divided the sum of the checks by two to calculate the amount of the transfer attributable to Junior.[7]  As the sole owner of JBE, Laslie benefitted from the transfer.  JBE and Laslie gave nothing to A&B Properties in exchange for the money.  (Tr. 99:19–23, 173:21–175:3).

89.     In its answers to interrogatories submitted to Wheeler during discovery, A&B Properties falsely represented that, during the time period at issue, it never paid or transferred money to either JBE or Laslie.  (Pl.'s Ex. 243).  In its answers to interrogatories submitted to Wheeler during discovery, JBE falsely represented that, during the time period at issue, it never received money from A&B Properties.  (Pl.'s Ex. 138).  In his answers to interrogatories submitting to Wheeler during discovery, Laslie falsely represented that, during the time period at issue, he received no income or money from A&B Properties.  (Pl.'s Ex. 134).  While under oath at their depositions, Laslie confirmed the accuracy of his and JBE's false representations.  (Pl.'s Ex. 233, 18:11–19:13, 28:21–31:3).

90.     In Finding 11, Ms. Gearhart determined that A&B Properties transferred $4,352.50 to Laslie.  A&B Properties issued checks directly to Laslie totaling $8,705.00.  Since Junior held a 50% ownership interest in A&B Properties, Ms. Gearhart divided the sum of the checks by two to calculate the amount of the transfer

---

[7]    $23,850.00 ÷ 2 = $11,925.00.

32

attributable to Junior.[8]  Laslie gave nothing to A&B Properties in exchange for the money.  (Tr. 99:24–100:1, 175:4–23).

91. In its answers to interrogatories submitted to Wheeler during discovery, A&B Properties falsely represented that, during the time period at issue, it never paid or transferred money to Laslie.  (Pl.'s Ex. 243).  In his answers to interrogatories submitted to Wheeler during discovery, Laslie falsely represented that, during the time period at issue, he received no income or money from A&B Properties.  (Pl.'s Ex. 134).  While under oath at his deposition, Laslie confirmed the accuracy of his false representation.  (Pl.'s Ex. 233, 18:11–19:13).

92. Lastly, in Finding 12, Ms. Gearhart determined that $402,040.83 had been withdrawn from AFS's bank account.  Although Ms. Gearhart could not uncover where this money went, she noted that Junior and JBE failed to produce bank statements and accounting information as requested by Wheeler during discovery, suggesting that AFS may have transferred some or all of this money to Junior and/or JBE.  (Tr. 100:2–9, 168:9–170:4).

93. In sum, AFS and Junior transferred a total of $2,614,756.60 worth of assets to Junior's family members and their companies.[9]  This amount does not include the $402,040.83 withdrawn from AFS's bank account, as Ms. Gearhart was unable to determine whether the money was transferred and, if so, to whom.  (Tr. 170:1–4).

---

[8]  $8,705.00 ÷ 2 = $4,352.50.

[9]  At trial, Ms. Gearhart testified that AFS and Junior transferred a total of $2,662,756.76 worth of assets to Junior's family members and their companies.  (Tr. 100:10–13).  After adding the numbers under each individual Finding, however, the Court reaches $2,614,756.60.  The difference between the Court's number and the number testified to by Ms. Gearhart equals $48,000.16.  It therefore appears that Ms. Gearhart inadvertently included a $48,000.00 payroll payment allegedly made by AFS to Jonathan Caton Jones under Finding 9.  Since this matter is stayed as to Jonathan Caton Jones due to his filing for bankruptcy, the Court excludes this alleged payment.  The remaining $0.16 difference is the result of rounding errors.

94. Ms. Gearhart additionally determined that AFS and Junior were insolvent at the time each of the transfers identified in Findings 1 through 12 occurred. According to their financial information, AFS's and Junior's liabilities exceeded their assets during the time period at issue and both were unable to pay their obligations as they became due. (Tr. 175:24–189:13).

95. In her professional opinion, Ms. Gearhart concludes that all of the above-described transfers were fraudulent and were made with the actual intent to defraud Wheeler and other creditors. Ms. Gearhart reached this conclusion based on her review of a number of factors, including: (1) no Defendant gave anything in exchange for any of the transfers, (2) all of the transfers were made from AFS or Junior to an insider (that is, to a relative of Junior or to a company owned by his relative), (3) AFS and Junior retained possession of or control over much of the money and property they transferred, (4) all of the Defendants concealed the true nature and extent of the transfers (such as by destroying evidence, hindering Wheeler's access to Defendants' accounting information, and by lying in discovery responses and under oath at depositions), (5) AFS and Junior had incurred a substantial debt to Wheeler shortly before they made the transfers, (6) AFS and Junior were facing numerous lawsuits by other creditors shortly before they made the transfers, (7) Junior filed for bankruptcy shortly after he and AFS made the transfers, (8) in total, the transfers amounted to substantially all of AFS's and Junior's assets, and (9) AFS and Junior were insolvent when they made each transfer. (Tr. 189:14–207:25).

96. In her professional opinion, Ms. Gearhart also concludes that AFS, JBE, Best Buy, A&B Properties, and A&B Developments were all merely the alter egos of the individual Defendants who owned them. Ms. Gearhart reached this conclusion based on her review of a number of factors, including: (1) the companies comingled their funds and assets and shared many of the same employees, (2) the companies were used for the improper purpose of evading creditors, (3) the individuals who owned the companies did not observe corporate formalities (*e.g.*, there were no minutes from company meetings, there were no resolutions codifying official company actions, the companies did not keep organized and accurate business or accounting records, etc.), (4) Junior, Senior, Ann, and Laslie used company funds and assets to pay for their own personal expenses and for the personal expenses of other family members, (5) Junior commonly referred to AFS, JBE, Best Buy, A&B Developments, and A&B Properties collectively as "the Jones companies," and (6) Junior, Senior, and Ann frequently confused who actually owned A&B Developments. (Tr. 208:1–215:11).

97. The Court finds that Ms. Gearhart is a credible and knowledgeable witness and that her findings and conclusions are supported by the evidence. The Court therefore adopts Ms. Gearhart's findings and conclusions as its own, including those findings and conclusions not specifically stated in this Memorandum of Decision.

## CONCLUSIONS OF LAW

### Subject Matter Jurisdiction

98.  The Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(a)(1).  At the time this action was commenced, Wheeler was a citizen of a state of which no Defendant was a citizen, and the amount in controversy exceeded $75,000.00.

### Breach of Contract, Unjust Enrichment, and Breach of Guaranty

99.  For the reasons stated in the Court's March 4, 2016 Order on the parties' motions for summary judgment, Wheeler is entitled to judgment in its favor on Counts I, II, and III.  The Court will accordingly enter judgment in favor of Wheeler on those claims in the amount of $794,530.13 plus interest at the rate of 5% per month plus attorney's fees and costs to be determined at a later date.

### Piercing the Corporate Veil and Alter Ego

100.  As to Count XLV, Wheeler has met its burden of proving that AFS was the mere alter ego of Junior.  Junior exercised complete control and dominion over AFS such that AFS had no separate mind, will, or existence of its own.  Junior misused his control and dominion over AFS and this misuse caused injury to Wheeler.  As a result, Junior is legally responsible for AFS's acts, and AFS's corporate form will be disregarded.  All transfers made by AFS will be treated as if they were made by Junior.

101.  As to Count XLV, Wheeler has met its burden of proving that Best Buy was the mere alter ego of Senior and Ann.  Senior and Ann exercised complete control and

dominion over Best Buy such that Best Buy had no separate mind, will, or existence of its own. Senior and Ann misused their control and dominion over Best Buy and this misuse caused injury to Wheeler. As a result, Senior and Ann are each legally responsible for Best Buy's acts to the extent of their respective ownership interests in Best Buy, and Best Buy's corporate form will be disregarded. All transfers made by Best Buy will be treated as if they were made by Senior and Ann, and all transfers made to Best Buy will be treated as if they were made to Senior and Ann.

102. As to Count XLV, Wheeler has met its burden of proving that A&B Developments was the mere alter ego of Senior and Ann. Senior and Ann exercised complete control and dominion over A&B Developments such that A&B Developments had no separate mind, will, or existence of its own. Senior and Ann misused their control and dominion over A&B Developments and this misuse caused injury to Wheeler. As a result, Senior and Ann are each legally responsible for A&B Developments' acts to the extent of their respective ownership interests in A&B Developments, and A&B Developments' corporate form will be disregarded. All transfers made by A&B Developments will be treated as if they were made by Senior and Ann, and all transfers made to A&B Developments will be treated as if they were made to Senior and Ann.

103. As to Count XLV, Wheeler has met its burden of proving that JBE was the mere alter ego of Laslie. Laslie exercised complete control and dominion over JBE such that JBE had no separate mind, will, or existence of its own. Laslie misused his control and dominion over JBE and this misuse caused injury to Wheeler. As a

result, Laslie is legally responsible for JBE's acts, and JBE's corporate form will be disregarded.  All transfers made by JBE will be treated as if they were made by Laslie, and all transfers made to JBE will be treated as if they were made to Laslie.

104.   As to Count XLV, Wheeler has met its burden of proving that A&B Properties was the mere alter ego of Junior.  Junior exercised complete control and dominion over A&B Properties such that A&B Properties had no separate mind, will, or existence of its own.  Junior misused his control and dominion over A&B Properties and this misuse caused injury to Wheeler.  As a result, Junior is legally responsible for A&B Properties' acts to the extent of his ownership interest in A&B Properties, and A&B Properties' corporate form will be disregarded.  All transfers made by A&B Properties will be treated as if they were made by Junior, and all transfers made to A&B Developments will be treated as if they were made to Junior.

## Fraudulent Transfers—Actual Fraud

105.   Wheeler has met its burden of proving that the transfers alleged in Count IV of the Complaint are fraudulent transfers of assets from AFS to Junior pursuant to Ala. Code § 8-9A-4(b).  The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12.  These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee.  These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors.  Accordingly, these fraudulent transfers will be voided.

106. Wheeler has met its burden of proving that the transfers alleged in Count V of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Best Buy, Senior, and Ann pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

107. Wheeler has met its burden of proving that the transfers alleged in Count VI of the Complaint are fraudulent transfers of assets from AFS and/or Junior to A&B Developments and Ann pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

108. Wheeler has met its burden of proving that the transfers alleged in Count VII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to A&B Developments and Ann pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated

by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

109. Wheeler has met its burden of proving that the transfers alleged in Count VIII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Best Buy, Senior, and Ann pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

110. Wheeler has met its burden of proving that the transfers alleged in Count IX of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Laslie and JBE pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

111.    Wheeler has met its burden of proving that the transfers alleged in Count X of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Pirates Tow pursuant to Ala. Code § 8-9A-4(b).   The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12.   These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee.   These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors.   Accordingly, these fraudulent transfers will be voided.

112.    Wheeler has met its burden of proving that the transfers alleged in Count XI of the Complaint are fraudulent transfers of assets from JBE to Best Buy pursuant to Ala. Code § 8-9A-4(b).  The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12.   These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee.   These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors.   Accordingly, these fraudulent transfers will be voided.

113.    Wheeler has met its burden of proving that the transfers alleged in Count XII of the Complaint are fraudulent transfers of assets from Pirates Tow to Best Buy pursuant to Ala. Code § 8-9A-4(b).   The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12.   These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and

willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

114. Wheeler has met its burden of proving that the transfers alleged in Count XIII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to A&B Properties pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

115. Wheeler has met its burden of proving that the transfers alleged in Count XIV of the Complaint are fraudulent transfers of assets from A&B Properties to Best Buy pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

116.    Wheeler has met its burden of proving that the transfers alleged in Count XV of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Virginia pursuant to Ala. Code § 8-9A-4(b).   The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12.   These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee.   These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors.   Accordingly, these fraudulent transfers will be voided.

117.    Wheeler has met its burden of proving that the transfers alleged in Count XVI of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Ann pursuant to Ala. Code § 8-9A-4(b).   The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12.   These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee.   These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors.   Accordingly, these fraudulent transfers will be voided.

118.    Wheeler has met its burden of proving that the transfers alleged in Count XVII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Senior pursuant to Ala. Code § 8-9A-4(b).   The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12.   These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor

and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

119. Wheeler has met its burden of proving that the transfers alleged in Count XVIII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Laslie pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

120. Wheeler has met its burden of proving that the transfers alleged in Count XIX of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Kyle pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

121.    Wheeler has met its burden of proving that the transfers alleged in Count XXI of the Complaint are fraudulent transfers of assets from JBE to Virginia pursuant to Ala. Code § 8-9A-4(b).   The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12.   These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee.  These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors.   Accordingly, these fraudulent transfers will be voided.

122.    Wheeler has met its burden of proving that the transfers alleged in Count XXII of the Complaint are fraudulent transfers of assets from JBE to Senior pursuant to Ala. Code § 8-9A-4(b).   The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12.   These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee.  These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors.   Accordingly, these fraudulent transfers will be voided.

123.    Wheeler has met its burden of proving that the transfers alleged in Count XXIII of the Complaint are fraudulent transfers of assets from JBE to Ann pursuant to Ala. Code § 8-9A-4(b).  The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12.   These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully,

intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

124. Wheeler has met its burden of proving that the transfers alleged in Count XXIV of the Complaint are fraudulent transfers of assets from JBE to Laslie pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

125. Wheeler has met its burden of proving that the transfers alleged in Count XXV of the Complaint are fraudulent transfers of assets from JBE to Kyle pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

126. Wheeler has met its burden of proving that the transfers alleged in Count XXVII of the Complaint are fraudulent transfers of assets from Pirates Tow to Virginia pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

127. Wheeler has met its burden of proving that the transfers alleged in Count XXVIII of the Complaint are fraudulent transfers of assets from Pirates Tow to Senior pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

128. Wheeler has met its burden of proving that the transfers alleged in Count XXIX of the Complaint are fraudulent transfers of assets from Pirates Tow to Ann to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully,

intentionally, and maliciously accepted by the transferee.  These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors.  Accordingly, these fraudulent transfers will be voided.

129.    Wheeler has met its burden of proving that the transfers alleged in Count XXX of the Complaint are fraudulent transfers of assets from Pirates Tow to Laslie pursuant to Ala. Code § 8-9A-4(b).  The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12.  These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee.  These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors.  Accordingly, these fraudulent transfers will be voided.

130.    Wheeler has met its burden of proving that the transfers alleged in Count XXXI of the Complaint are fraudulent transfers of assets from Pirates Tow to Kyle pursuant to Ala. Code § 8-9A-4(b).  The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12.  These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee.  These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors.  Accordingly, these fraudulent transfers will be voided.

131.   Wheeler has met its burden of proving that the transfers alleged in Count XXXIII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to A&B Developments pursuant to Ala. Code § 8-9A-4(b).   The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12.   These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors.   Accordingly, these fraudulent transfers will be voided.

132.   Wheeler has met its burden of proving that the transfers alleged in Count XXXIV of the Complaint are fraudulent transfers of assets from A&B Properties to Senior pursuant to Ala. Code § 8-9A-4(b).   The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12.   These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee.   These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors.   Accordingly, these fraudulent transfers will be voided.

133.   Wheeler has met its burden of proving that the transfers alleged in Count XXXV of the Complaint are fraudulent transfers of assets from A&B Properties to Ann pursuant to Ala. Code § 8-9A-4(b).   The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12.   These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor

and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

134. Wheeler has met its burden of proving that the transfers alleged in Count XXXVI of the Complaint are fraudulent transfers of assets from A&B Properties to Laslie pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

135. Wheeler has met its burden of proving that the transfers alleged in Count XXXVII of the Complaint are fraudulent transfers of assets from A&B Developments to Senior pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

136. Wheeler has met its burden of proving that the transfers alleged in Count XXXVIII of the Complaint are fraudulent transfers of assets from A&B Developments to Ann pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

137. Wheeler has met its burden of proving that the transfers alleged in Count XXXIX of the Complaint are fraudulent transfers of assets from A&B Developments to Laslie pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

138. Wheeler has met its burden of proving that the transfers alleged in Count XLI of the Complaint are fraudulent transfers of assets from A&B Developments to Virginia pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor

and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

139. Wheeler has met its burden of proving that the transfers alleged in Count XLII of the Complaint are fraudulent transfers of assets from A&B Developments to Best Buy pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

140. Wheeler has met its burden of proving that the transfers alleged in Count XLIII of the Complaint are fraudulent transfers of assets from Laslie to Best Buy, Senior, and/or Ann pursuant to Ala. Code § 8-9A-4(b). The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee. These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors. Accordingly, these fraudulent transfers will be voided.

141.  Wheeler has met its burden of proving that the transfers alleged in Count XLIV of the Complaint are fraudulent transfers of assets from AFS to unidentified third parties pursuant to Ala. Code § 8-9A-4(b).  The dollar amount of these transfers is accurately summarized in Exhibit 542, Findings 1 through 12.  These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee.  These transfers were made with the willful, malicious, and actual intent to injure, delay, or defraud Wheeler and other creditors.  Accordingly, these fraudulent transfers will be voided.

<u>Fraudulent Transfers—Constructive Fraud<br/>as to Present Creditors</u>

142.  Wheeler has met its burden of proving that the transfers alleged in Count IV of the Complaint are fraudulent transfers of assets from AFS to Junior pursuant to Ala. Code § 8-9A-5.  The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12.  These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value.  The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers.  In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent.  Accordingly, these fraudulent transfers will be voided.

143. Wheeler has met its burden of proving that the transfers alleged in Count V of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Best Buy, Senior, and Ann pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

144. Wheeler has met its burden of proving that the transfers alleged in Count VI of the Complaint are fraudulent transfers of assets from AFS and/or Junior to A&B Developments and Ann pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent

debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

145. Wheeler has met its burden of proving that the transfers alleged in Count VII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to A&B Developments and Ann pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

146. Wheeler has met its burden of proving that the transfers alleged in Count VIII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Best Buy, Senior, and Ann pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The

transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

147. Wheeler has met its burden of proving that the transfers alleged in Count IX of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Laslie and JBE pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

148. Wheeler has met its burden of proving that the transfers alleged in Count X of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Pirates Tow pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent

transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

149. Wheeler has met its burden of proving that the transfers alleged in Count XI of the Complaint are fraudulent transfers of assets from JBE to Best Buy pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

150. Wheeler has met its burden of proving that the transfers alleged in Count XII of the Complaint are fraudulent transfers of assets from Pirates Tow to Best Buy pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is

accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

151. Wheeler has met its burden of proving that the transfers alleged in Count XIII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to A&B Properties pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

152. Wheeler has met its burden of proving that the transfers alleged in Count XIV of the Complaint are fraudulent transfers of assets from A&B Properties to Best Buy pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

153. Wheeler has met its burden of proving that the transfers alleged in Count XV of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Virginia pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the

time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

154. Wheeler has met its burden of proving that the transfers alleged in Count XVI of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Ann pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

155. Wheeler has met its burden of proving that the transfers alleged in Count XVII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Senior pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers

were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

156. Wheeler has met its burden of proving that the transfers alleged in Count XVIII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Laslie pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

157. Wheeler has met its burden of proving that the transfers alleged in Count XIX of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Kyle pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these

fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

158. Wheeler has met its burden of proving that the transfers alleged in Count XXI of the Complaint are fraudulent transfers of assets from JBE to Virginia pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

159. Wheeler has met its burden of proving that the transfers alleged in Count XXII of the Complaint are fraudulent transfers of assets from JBE to Senior pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time

he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

160. Wheeler has met its burden of proving that the transfers alleged in Count XXIII of the Complaint are fraudulent transfers of assets from JBE to Ann pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

161. Wheeler has met its burden of proving that the transfers alleged in Count XXIV of the Complaint are fraudulent transfers of assets from JBE to Laslie pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the

exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

162. Wheeler has met its burden of proving that the transfers alleged in Count XXV of the Complaint are fraudulent transfers of assets from JBE to Kyle pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

163. Wheeler has met its burden of proving that the transfers alleged in Count XXVII of the Complaint are fraudulent transfers of assets from Pirates Tow to Virginia pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor

and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

164.     Wheeler has met its burden of proving that the transfers alleged in Count XXVIII of the Complaint are fraudulent transfers of assets from Pirates Tow to Senior pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

165.     Wheeler has met its burden of proving that the transfers alleged in Count XXIX of the Complaint are fraudulent transfers of assets from Pirates Tow to Ann pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent

transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

166. Wheeler has met its burden of proving that the transfers alleged in Count XXX of the Complaint are fraudulent transfers of assets from Pirates Tow to Laslie pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

167. Wheeler has met its burden of proving that the transfers alleged in Count XXXI of the Complaint are fraudulent transfers of assets from Pirates Tow to Kyle pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is

accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

168. Wheeler has met its burden of proving that the transfers alleged in Count XXXIII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to A&B Developments pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

169. Wheeler has met its burden of proving that the transfers alleged in Count XXXIV of the Complaint are fraudulent transfers of assets from A&B Properties to Senior pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

170. Wheeler has met its burden of proving that the transfers alleged in Count XXXV of the Complaint are fraudulent transfers of assets from A&B Properties to Ann pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the

time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

171. Wheeler has met its burden of proving that the transfers alleged in Count XXXVI of the Complaint are fraudulent transfers of assets from A&B Properties to Laslie pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

172. Wheeler has met its burden of proving that the transfers alleged in Count XXXVII of the Complaint are fraudulent transfers of assets from A&B Developments to Senior pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these

fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

173. Wheeler has met its burden of proving that the transfers alleged in Count XXXVIII of the Complaint are fraudulent transfers of assets from A&B Developments to Ann pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

174. Wheeler has met its burden of proving that the transfers alleged in Count XXXIX of the Complaint are fraudulent transfers of assets from A&B Developments to Laslie pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent

at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

175. Wheeler has met its burden of proving that the transfers alleged in Count XLI of the Complaint are fraudulent transfers of assets from A&B Developments to Virginia pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

176. Wheeler has met its burden of proving that the transfers alleged in Count XLII of the Complaint are fraudulent transfers of assets from A&B Developments to Best Buy pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These

fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

177. Wheeler has met its burden of proving that the transfers alleged in Count XLIII of the Complaint are fraudulent transfers of assets from Laslie to Best Buy, Senior, and/or Ann pursuant to Ala. Code § 8-9A-5. The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value. The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers. In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent. Accordingly, these fraudulent transfers will be voided.

178. Wheeler has met its burden of proving that the transfers alleged in Count XLIV of the Complaint are fraudulent transfers of assets from AFS to unidentified third parties pursuant to Ala. Code § 8-9A-5.  The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12.  These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value.  The transferor was insolvent at the time he/she/it made these fraudulent transfers or became insolvent as a result of these fraudulent transfers.   In addition or in the alternative, these fraudulent transfers were made to an insider for an antecedent debt, the transferor was insolvent at the time of the transfer, and the insider had reasonable cause to believe that the transferor was insolvent.  Accordingly, these fraudulent transfers will be voided.

<u>Fraudulent Transfers—Constructive Fraud</u>
<u>as to Present and Future Creditors</u>

179. Wheeler has met its burden of proving that the transfers alleged in Count IV of the Complaint are fraudulent transfers of assets from AFS to Junior pursuant to Ala. Code § 8-9A-4(c).  The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12.  These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts

beyond his/her/its ability to pay as they became due.  Accordingly, these fraudulent transfers will be voided.

180.    Wheeler has met its burden of proving that the transfers alleged in Count V of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Best Buy, Senior, and Ann pursuant to Ala. Code § 8-9A-4(c).  The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12.  These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

181.    Wheeler has met its burden of proving that the transfers alleged in Count VI of the Complaint are fraudulent transfers of assets from AFS and/or Junior to A&B Developments and Ann pursuant to Ala. Code § 8-9A-4(c).  The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12.  These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

182. Wheeler has met its burden of proving that the transfers alleged in Count VII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to A&B Developments and Ann pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

183. Wheeler has met its burden of proving that the transfers alleged in Count VIII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Best Buy, Senior, and Ann pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

184. Wheeler has met its burden of proving that the transfers alleged in Count IX of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Laslie and JBE pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent

transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

185. Wheeler has met its burden of proving that the transfers alleged in Count X of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Pirates Tow pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

186. Wheeler has met its burden of proving that the transfers alleged in Count XI of the Complaint are fraudulent transfers of assets from JBE to Best Buy pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the

exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

187. Wheeler has met its burden of proving that the transfers alleged in Count XII of the Complaint are fraudulent transfers of assets from Pirates Tow to Best Buy pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

188. Wheeler has met its burden of proving that the transfers alleged in Count XIII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to A&B Properties pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that

he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

189.     Wheeler has met its burden of proving that the transfers alleged in Count XIV of the Complaint are fraudulent transfers of assets from A&B Properties to Best Buy pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

190.     Wheeler has met its burden of proving that the transfers alleged in Count XV of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Virginia pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

191.    Wheeler has met its burden of proving that the transfers alleged in Count XVI of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Ann pursuant to Ala. Code § 8-9A-4(c).  The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12.  These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due.  Accordingly, these fraudulent transfers will be voided.

192.    Wheeler has met its burden of proving that the transfers alleged in Count XVII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Senior pursuant to Ala. Code § 8-9A-4(c).  The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12.  These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due.  Accordingly, these fraudulent transfers will be voided.

193.    Wheeler has met its burden of proving that the transfers alleged in Count XVIII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Laslie pursuant to Ala. Code § 8-9A-4(c).  The dollar amount of these fraudulent transfers

is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

194. Wheeler has met its burden of proving that the transfers alleged in Count XIX of the Complaint are fraudulent transfers of assets from AFS and/or Junior to Kyle pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

195. Wheeler has met its burden of proving that the transfers alleged in Count XXI of the Complaint are fraudulent transfers of assets from JBE to Virginia pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the

exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

196. Wheeler has met its burden of proving that the transfers alleged in Count XXII of the Complaint are fraudulent transfers of assets from JBE to Senior pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

197. Wheeler has met its burden of proving that the transfers alleged in Count XXIII of the Complaint are fraudulent transfers of assets from JBE to Ann pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due.

198.     Wheeler has met its burden of proving that the transfers alleged in Count XXIV of the Complaint are fraudulent transfers of assets from JBE to Laslie pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

199.     Wheeler has met its burden of proving that the transfers alleged in Count XXV of the Complaint are fraudulent transfers of assets from JBE to Kyle pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

200.     Wheeler has met its burden of proving that the transfers alleged in Count XXVII of the Complaint are fraudulent transfers of assets from Pirates Tow to Virginia pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers

is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

201. Wheeler has met its burden of proving that the transfers alleged in Count XXVIII of the Complaint are fraudulent transfers of assets from Pirates Tow to Senior pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

202. Wheeler has met its burden of proving that the transfers alleged in Count XXIX of the Complaint are fraudulent transfers of assets from Pirates Tow to Ann pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the

exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

203. Wheeler has met its burden of proving that the transfers alleged in Count XXX of the Complaint are fraudulent transfers of assets from Pirates Tow to Laslie pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

204. Wheeler has met its burden of proving that the transfers alleged in Count XXXI of the Complaint are fraudulent transfers of assets from Pirates Tow to Kyle pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts

beyond his/her/its ability to pay as they became due.  Accordingly, these fraudulent transfers will be voided.

205.   Wheeler has met its burden of proving that the transfers alleged in Count XXXIII of the Complaint are fraudulent transfers of assets from AFS and/or Junior to A&B Developments pursuant to Ala. Code § 8-9A-4(c).  The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12.  These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

206.   Wheeler has met its burden of proving that the transfers alleged in Count XXXIV of the Complaint are fraudulent transfers of assets from A&B Properties to Senior pursuant to Ala. Code § 8-9A-4(c).  The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12.  These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due.  Accordingly, these fraudulent transfers will be voided.

207. Wheeler has met its burden of proving that the transfers alleged in Count XXXV of the Complaint are fraudulent transfers of assets from A&B Properties to Ann pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

208. Wheeler has met its burden of proving that the transfers alleged in Count XXXVI of the Complaint are fraudulent transfers of assets from A&B Properties to Laslie pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

209. Wheeler has met its burden of proving that the transfers alleged in Count XXXVII of the Complaint are fraudulent transfers of assets from A&B Developments to Senior pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent

transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

210. Wheeler has met its burden of proving that the transfers alleged in Count XXXVIII of the Complaint are fraudulent transfers of assets from A&B Developments to Ann pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

211. Wheeler has met its burden of proving that the transfers alleged in Count XXXIX of the Complaint are fraudulent transfers of assets from A&B Developments to Laslie pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee

without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

212. Wheeler has met its burden of proving that the transfers alleged in Count XLI of the Complaint are fraudulent transfers of assets from A&B Developments to Virginia pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

213. Wheeler has met its burden of proving that the transfers alleged in Count XLII of the Complaint are fraudulent transfers of assets from A&B Developments to Best Buy pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur,

debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

214.    Wheeler has met its burden of proving that the transfers alleged in Count XLIII of the Complaint are fraudulent transfers of assets from Laslie to Best Buy, Senior, and/or Ann pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

215.    Wheeler has met its burden of proving that the transfers alleged in Count XLIV of the Complaint are fraudulent transfers of assets from AFS to unidentified third parties pursuant to Ala. Code § 8-9A-4(c). The dollar amount of these fraudulent transfers is accurately summarized in Exhibit 542, Findings 1 through 12. These fraudulent transfers were willfully, intentionally, and maliciously effectuated by the transferor and willfully, intentionally, and maliciously accepted by the transferee without the exchange of reasonably equivalent value, and the transferor intended to incur, or believed or reasonably should have believed that he/she/it would incur, debts beyond his/her/its ability to pay as they became due. Accordingly, these fraudulent transfers will be voided.

216.   Pursuant to the terms of the Agreement between AFS and Wheeler and the personal guaranty of the Agreement executed by Junior, AFS and Junior are liable for $3,019,214.49 due to AFS's breach of the Agreement. Of this sum, $794,530.13 represents the unpaid principal balance of the Agreement and $2,224,684.36 represents the default interest owed on the balance through the date of judgment, as calculated according to the Agreement's terms.[10] After disregarding AFS's corporate form, the Court will assess the full sum against Junior.

217.   The Court will void the fraudulent transfers and impose liability against each of the Defendants for the value of the assets they fraudulently received or benefitted from. Each Defendant will share jointly and severally in Junior's liability to Wheeler to the extent of the value of the assets each Defendant fraudulently received or benefitted from. After disregarding the corporate forms identified previously, the Court imposes liability against Defendants for the following sums.

218.   As to Finding 1, the $311,333.20 worth of fraudulent cash transfers from Junior to Senior and Ann are null and void. Liability will be imposed against Senior and Ann according to their respective ownership interests in Best Buy: Senior and Ann are each liable for $155,666.60.

219.   As to Finding 2, the $171,360.99 worth of fraudulent cash transfers from Junior to Pirates Tow are null and void. The subsequent $40,565.18 worth of cash transfers

---

[10]   The Agreement provides that the unpaid balance accrues simple interest at the rate of 5% per month from the date of non-payment. The date of non-payment in this case is August 22, 2012, and the amount of interest that accrues on the unpaid balance each month equals $39,726.5065. After fifty-six months of non-payment, a total of $2,224,684.36 in interest has accrued.

from Pirates Tow to Senior and Ann and the $2,660.00 worth of cash transfers from Pirates Tow to Ann are also null and void.  Liability for the $40,565.18 will be imposed against Senior and Ann as subsequent transferees according to their respective ownership interests in Best Buy: Senior and Ann are each liable for $20,282.59.   Liability for the $2,660.00 will be imposed against Ann as a subsequent transferee.  Liability for the remaining $128,135.81 will be imposed against Pirates Tow.

220.    As to Finding 3, the $275,764.08 worth of fraudulent inventory transfers from Junior to Pirates Tow are null and void.  Liability will be imposed against Pirates Tow for the full value of the transfers.

221.    As to Finding 4, the $347,466.00 worth of fraudulent equipment transfers from Junior to Laslie are null and void.  The subsequent $78,216.00 worth of equipment transfers from Laslie to Senior are also null and void.  Liability for the $78,216.00 will be imposed against Senior as a subsequent transferee.   Liability for the remaining $269,250.00 will be imposed against Laslie.

222.    As to Finding 5, the $383,762.00 worth of fraudulent inventory transfers from Junior to Laslie are null and void.  The subsequent $6,242.75 worth of proceed transfers from Laslie to Virginia are also null and void.  Liability for the $6,242.75 will be imposed against Virginia as a subsequent transferee. Liability for the remaining $377,519.25 will be imposed against Laslie.

223.    As to Finding 6, the $595,258.99 worth of fraudulent cash transfers from Junior for the benefit of Senior and Ann are null and void.  Liability will be imposed against

Senior and Ann according to their respective ownership interests in A&B Developments: Senior is liable for $5,952.59 and Ann is liable for $589,306.40.

224. As to Finding 7, the $250,000.00 worth of fraudulent equipment transfers from Junior to Senior and Ann are null and void. Liability will be imposed against Senior and Ann according to their respective ownership interests in A&B Developments: Senior is liable for $2,500.00 and Ann is liable for $247,500.00.

225. As to Finding 8, the $189,533.84 worth of real estate fraudulently transferred from Junior to Senior and Ann is null and void. Liability will be imposed against Senior and Ann according to their respective ownership interests in Best Buy: Senior and Ann are each liable for $94,766.92.

226. As to Finding 9, the $74,000.00 worth of fraudulent cash and payroll transfers from Junior to Kyle, Ann, and Laslie are null and void. Liability will be imposed against Kyle in the amount of $8,000.00, against Ann in the amount of $26,000.00, and against Laslie in the amount of $40,000.00.

227. As to Finding 10, the $11,925.00 worth of fraudulent cash transfers from Junior to Laslie are null and void. Liability will be imposed against Laslie for the full value of the transfers.

228. As to Finding 11, the $4,352.50 worth of fraudulent cash transfers from Junior to Laslie are null and void. Liability will be imposed against Laslie for the full value of the transfers.

229. In total, Ann is liable for $1,136,182.51 worth of fraudulent transfers, Senior is liable for $357,384.70 worth of fraudulent transfers, Laslie is liable for $703,046.75 worth of fraudulent transfers, Pirates Tow is liable for $403,899.89 worth of fraudulent

transfers, Kyle is liable for $8,000.00 worth of fraudulent transfers, and Virginia is liable for $6,242.75 worth of fraudulent transfers.

230. The Court summarizes liability for the fraudulent transfers in the following table:

| Defendant | Amount Owed | From Finding # | Totals |
|---|---|---|---|
| Ann | $155,666.60 | 1 | |
| | 22,942.59 | 2 | |
| | 589,306.40 | 6 | |
| | 247,500.00 | 7 | |
| | 94,766.92 | 8 | |
| | 26,000.00 | 9 | $1,136,182.51 |
| Senior | $155,666.60 | 1 | |
| | 20,282.59 | 2 | |
| | 78,216.00 | 4 | |
| | 5,952.59 | 6 | |
| | 2,500.00 | 7 | |
| | 94,766.92 | 8 | $357,384.70 |
| Laslie | $269,250.00 | 4 | |
| | 377,519.25 | 5 | |
| | 40,000.00 | 9 | |
| | 11,925.00 | 10 | |
| | 4,352.50 | 11 | $703,046.75 |
| Pirates Tow | $128,135.81 | 2 | |
| | 275,764.08 | 3 | $403,899.89 |
| Kyle | $8,000.00 | 9 | $8,000.00 |
| Virginia | $6,242.75 | 5 | $6,242.75 |
| | | | $2,614,756.60 |

231. Pursuant to Rules 52(a)(1) and 58 of the Federal Rules of Civil Procedure, the Court will set out judgment in a separate document. Wheeler has **fourteen (14) days** from the date of judgment to file a properly-supported motion for attorney's fees.

232. Additionally, on May 20, 2016 and October 7, 2016, the Court awarded a total of $58,074.31 in sanctions to Wheeler and against Defendants, which sum remains

unpaid.  (Dos. 117, 141).  The Court will therefore enter a separate judgment as to sanctions as well.

**DONE AND ORDERED** in Orlando, Florida on May 15, 2017.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record